Michael L. TOMKINS, Respondent,

v.

Paul McNEIL, Jr., Director of Revenue, Department of Revenue, Appellant.

No. WD 40666.

Missouri Court of Appeals, Western District.

March 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

As modified Aug. 1, 1989.

William L. Webster, Atty. Gen., Cynthia B. Green, Sp. Asst. Atty. Gen., Missouri Dept. of Revenue, Jefferson City, for appellant.

Patrick E. Richardson, Green City, for respondent.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The case has been retransferred by an order of the Supreme Court of Missouri.

This is an appeal by the director of revenue from an adverse judgment of the Circuit Court of Schuyler County. The appeal follows a trial de novo after an administrative revocation of Tomkins' driving privileges under the driving while intoxicated prohibitions contained in §§ 302.500–.540, RSMo 1986. The sole issue on which the case turns is the effect of the failure of the instruments used to measure blood alcohol content to physically print out the test results as were displayed on the machine.

A highway patrolman was called to the intersection of two Routes in Schuyler County where he found the Tomkins' vehicle parked in the intersection. Tomkins was slumped over the steering wheel. The trooper's opinion was Tomkins was intoxicated and he was taken in for a breath test using a BAC Verifier machine. The patrolman testified as to the digital readout displayed on the machine which showed .16 hundredths of one percent, well in excess of the .13 level requiring suspension of driving privileges under the statute. The printer did not produce a hard copy of the results.

■ To establish a prima facie foundation for the introduction of breath analysis test results the test must be performed "(1) according to the techniques and methods approved by the division of health, (2) by persons possessing a valid permit, and (3) using equipment and devices approved by the division." *Jannett v. King,* 687 S.W.2d 252, 254 (Mo.App.1985).

With regard to (1), the techniques approved by the division of health call for,

some seven steps, the last two of which were not complied with in this case:

6. When printer has completed printing out test results, tear off tape, fill in subject's name, officer's name and badge number on printout tape.

7. Attach printout to blood alcohol test report.

19 CSR 20–30.060.

Tomkins' drivers license was suspended at the administrative level. Testifying before the circuit court was a Mr. Kiefer who inspected the BAC machines for the division of health. His pertinent testimony as to the reliability of the accuracy of the reading displayed where the printer fails to function follows:

Q. So actually the numbers are displayed on the machine, that give the alcohol concentration reading, prior to the machine engaging to print?

A. Yes.

Q. What then is the relationship between the printer portion of the machine and the actual part of the machine that analyzes the sample?

A. The printer is basically the last in a series of steps. The printer is not necessary to assure a proper reading of the instrument, but being that we want a copy of that result afterwards, that is why the printer has been incorporated, so that we can get out a hard copy that you can actually hand to somebody and say, "here are the results."

Q. If the printer portion of the machine malfunctions, what would happen to the rest of the machine?

A. It shouldn't necessarily affect the rest of the machine.

\*   \*   \*   \*   \*   \*

Q. Sir, I would like to go back over once more with you concerning the printer and the machine, itself. If there was no printer attached to the BAC verifier, what would happen?

A. The instrument should give you a valid reading.

\*   \*   \*   \*   \*   \*

Q. How do each of these reports look? Was there anything wrong with the machine on any of these dates?

A. Nothing is shown to be wrong with the instrument.

The trial judge believed the director's testimonial evidence was credible and that Tomkins was intoxicated. The judge also concluded, "the result of the test by the machine displayed on the digital readout is not dependent upon the printer function of the machine." Nonetheless, the judge ordered that Tomkins' suspension be set aside because the rules and regulations promulgated by the division of health were not followed because the machine failed to produce a printout of the test results.

■ There was no evidence at trial to indicate a malfunctioning of the BAC Verifier machine in the determination of the readout, and it is not contended on appeal the printer malfunction polluted the .16 reading. *Jannett, supra,* at 254; *Director of Revenue v. Martin,* 752 S.W.2d 453, 454 (Mo.App.1988).

The court concludes there was unrefuted evidence to establish Tomkins having been intoxicated. To void the suspension would be to put literal procedural requirements above the legislative purpose of this law, to remove dangerous drunk drivers from Missouri roadways. *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985).

The requirement of adhering to the division of health standards is to provide a substitute for the common law foundation for introduction in evidence of the alcohol in a person's system. *State v. Crowell,* 560 S.W.2d 889, 891 (Mo.App.1978). The testing process is a procedural requirement to insure accurate results. With evidence of accuracy of the results here, it would go against the purpose of the law to void this suspension for the failure of the state to produce a printout. *Eckhoff v. Director of Revenue,* 745 S.W.2d 815, 816–17 (Mo.App. 1988). This decision is not meant to encourage or condone future non-compliance by the state, nor to always require the driver to show prejudice of substantive rights when the testing procedures are not strictly followed.

The circuit court judgment is reversed. Although the judgment is not clear, Tomkins had been granted a directed verdict after the respondent's evidence. In line with *Aron v. Director of Revenue,* 737 S.W.2d 718, 720 (Mo. banc 1987), the cause is remanded to allow Tomkins to present his evidence.