Jeffrey A. **SHINE**, Respondent,

v.

**DIRECTOR OF REVENUE, STATE of MISSOURI**, Appellant.

No. 58541.

Missouri Court of Appeals,
Eastern District,
Division One.

April 9, 1991.

David R. Human, Clayton, for appellant.

William L. Webster, Atty. Gen., Van M. Pounds, Jatha B. Sadowski, Sp. Asst. Attys. Gen., Jefferson City, for respondent.

PUDLOWSKI, Presiding Judge.

The Director of Revenue (Director) appeals the judgment of the trial court reinstating Jeffrey Shine's (Shine) driving privileges after they had been suspended pursuant to § 302.505, RSMo 1986.

The arresting officer testified he observed a vehicle being erratically operated upon Highway 40 and pulled it over. The officer asked for his driver's license. While Shine searched for his license the officer noticed the driver's eyes to be bloodshot and his speech was slurred. As the driver exited the vehicle he almost fell. He held onto the automobile as he walked to the rear of the car. He admitted having several drinks. He failed some of the field-sobriety tests and at that point the officer charged him with driving while intoxicated. On the way to the police station the officer gave Shine his Miranda warning.

The arresting officer administered the breath analysis test on an Intoximeter 3000. The test reflected that Shine had a blood alcohol content of .164 percent.

Shine was notified by the Director that his driver's license was suspended pursuant to §§ 302.520—302.540 RSMo due to the fact that his blood alcohol content measured in excess of .13 of one percent. Pursuant to Mo.Rev.Stat. § 302.530 (1986) Shine requested an administrative hearing. On September 7, 1989, a hearing was held. After the hearing a decision to suspend Shine's driver's license was sustained. Shine petitioned the circuit court for a trial de novo pursuant to § 302.535.

Prior to the arresting officer testifying as to the test procedure, he averred that Shine was intoxicated. The experienced officer based this conclusion on the driver's demeanor, the movement of the automobile and the failure to pass the field sobriety tests.

The officer then testified to the test procedure. The "Blood Alcohol Test Report—Intoximeter 3000" form includes two sections to be filled out by the operator: (1) the "operational checklist: Intoximeter 3000;" and the "certification by operator." In filling out the first section the officer testified that he followed a checklist in administering the test. He testified that he, as per the checklist, observed Shine for at least fifteen minutes prior to administering the test during which time Shine did not smoke, vomit, or orally intake any material. The officer testified that he followed each step of the checklist in the order that it appeared and that the Intoximeter 3000 appeared to function properly.

However, the officer stated that although he certified the second section and it was witnessed by another officer he failed to mechanically check the appropriate boxes on the form after the test was administered. He further testified that in preparation of trial he noticed that the boxes were not checked and that he physically checked them prior to trial. The portion of the form that the officer failed to check off as having been completed at the time of the test is as follows:

CERTIFICATION BY OPERATOR

As set forth in the rules promulgated by the Department of Health related to the determination of blood alcohol by breath analysis, I certify that:

☐ 1. There was no deviation from the procedure approved by the department.

☐ 2. To the best of my knowledge the instrument was functioning properly.

☐ 3. I am authorized to operate the instrument.

☐ 4. No radio transmission occurred inside the room where and when this test was being conducted, and that the instrument was at its RFI certified location during the test.

The trial court judge sustained Shine's petition and ordered the Director of Revenue to remove the suspension and reinstate respondent's license "since the court finds Dept. CF Health Reg. #19 CSR 20–30.-011(5)(A) was not complied with, the test results on Resp.Ex "B" are not admissible." The Director brought this appeal.

■ Director contends that the trial court erred in holding that the result of the chemical test of respondent's breath was not admissible because the testing officer did not comply with the Division of Health Regulation, 19 CSR 20–30.011(5)(A). Director contends that the testing officer's testimony at trial established substantive compliance with this regulation and thus the Director established a prima facie case for the introduction of the test results. Shine, however, contends that the trial court did not err because the failure to complete the checklist at the time of the test is non-compliance with the procedures promulgated by the Missouri Department of Health.

Section 302.505.1 RSMo 1986, requires the Director of Revenue to establish at trial de novo by a preponderance of the evidence that (1) there was probable cause to effect the initial arrest; and (2) that chemical analysis revealed that the arrestee had a blood alcohol content of .13 percent or more. *Strode v. Director of Revenue*, 724 S.W.2d 245, 248 (Mo. banc 1987); *Stewart v. Director of Revenue*, 702 S.W.2d 472, 475 (Mo. banc 1986). There is no dispute that the testimony of the officer clearly established probable cause to effect the initial arrest. He testified at trial that he observed unusual and unlawful driving, and once stopped, Shine was unable to complete all of the field sobriety tests successfully. *Schranz v. Director of Revenue*, 703 S.W.2d 912 (Mo.App.1986).

■ In order to establish a prima facie foundation to admit evidence of a breathalyzer test, it must be demonstrated that the testing methods set out in § 577.020 RSMo (1986) were followed in that the test was performed (1) according to the techniques and methods approved by the division of health, (2) by persons possessing a valid permit, and (3) using equipment and devices approved by the division. *Eckhoff v. Director of Revenue*, 745 S.W.2d 815, 816 (Mo.App.1988), *Jannet v. King*, 687 S.W.2d 252, 254 (Mo.App.1985). For the purpose of breath analysis tests, the procedural components of such tests include the testing techniques and methods, the qualifications of the person administering the tests, and the nature and description of the equipment and devices to be used. *Eckhoff v. Director of Revenue*, 745 S.W.2d *supra* at 817.

The trial court's order held that the Department of Health Regulation 19 CSR 20–30.011(5)(A) was not complied with, thereby rendering Shine's test results inadmissible. 19 CSR 20–30.011(5)(A) [General Provisions for the Determination of Blood, Breath, Saliva or Urine Analysis and Drug Testing] states:

(5) Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 20–30.060.

(A) An operational checklist, including the certification section shall be completed with each breath test at the time of the test, by the individual performing the test.

The instant regulation requires that the operational checklist be completed at the time of the test. Shine contends that the failure of the officer to check the boxes renders the test unreliable and thus inadmissible. However, at trial Shine did not raise any question as to the accuracy of the test, the qualification of the officer, or the proper functioning of the machine.

The record reveals that the officer testified at trial that as per the certification section, (1) he followed approved procedures; (2) the machine was functioning properly; (3) he was authorized to operate the machine; and (4) no radio transmission occurred inside the room during the test and the instrument was at its RFI certified location. The Director argues that the offi-

cer's testimony establishes compliance with the certification section of the operational checklist. He contends further that the administrative procedural deficiency of failing to check the four boxes at the time of the test is not fatal to the prima facie test for introduction of the test results. He maintains such failure is not fatal because there was substantive compliance with the steps delineated in the certification process. We agree.

In an analogous case, *Tomkins v. McNeil, Director of Revenue,* 782 S.W.2d 400 (Mo.App.1989), the trial court ordered the suspension of a driver's license to be set aside due to the fact that the testing instrument used to measure the driver's blood alcohol content failed to physically print out the test results displayed on the machine. In *Tomkins,* the trial court judge not only believed the Director of Revenue's testimonial evidence was credible, but also that the driver was intoxicated. The trial court judge also concluded, "the result of the test by the machine displayed on the digital readout is not dependent upon the printer function of the machine." Nevertheless, the trial court judge ruled the suspension of the driver's license to be "set aside because the rules and regulations promulgated by the division of health were not followed because the machine failed to produce a printout of the test results." *Tomkins, supra* at 402. On appeal the Western District held that "to void the suspension would be to put literal procedural requirements above the legislative purpose of this law, to remove dangerous drunk drivers from Missouri roadways." *Tomkins, supra* at 402; *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985).

In *Tomkins,* the court succinctly stated:

The requirement of adhering to the division of health standards is to provide a substitute for the common law foundation for introduction in evidence of the alcohol in a person's system. *State v. Crowell,* 560 S.W.2d 889, 891 (Mo.App. 1978). The testing process is a procedural requirement to insure accurate results. With evidence of accuracy of the results here, it would go against the purpose of the law to void this suspension for the failure of the state to produce a printout. *Eckhoff v. Director of Revenue,* 745 S.W.2d 815, 816–17 (Mo.App.1988). This decision is not meant to encourage or condone future non-compliance by the state, nor to always require the driver to show prejudice of substantive rights when the testing procedures are not strictly followed. *Tomkins, supra* at 402.

Here, the trial court did not, in its findings as in *Tomkins,* express an affirmative opinion as to the officer's credibility or the driver's intoxicated state. Rather, it relied on the literal procedural requirements of physically checking the boxes in the certification section of the intoxication form and sustained the driver's petition.

The object of the statute and its procedural process is to rid the highways of drunk drivers. The testing process is a procedural requirement to insure accurate results. *Tomkins, supra* at 402. We emphasize what the court in *Tomkins, supra* at 412, said, this decision is not meant to encourage or condone future non-compliance by law enforcement officials, nor to always require the driver to show prejudice of substantive rights when the testing procedures are not strictly followed.

We opine there was sufficient evidence, if believed, to find Shine guilty of driving while intoxicated. We reverse and remand the circuit court judgment for a new trial.

KAROHL and GRIMM, JJ., concur.