## Michael A. CAPPIELLO, Appellant,

v.

## DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.

No. 66254.

Missouri Court of Appeals,
Eastern District,
Division One.

March 28, 1995.

Frank J. Niesen, Jr., St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Michael A. Cappiello ("licensee"), appeals from an order of the Circuit Court of the City of St. Louis upholding the revocation of his driver's license by respondent, the Director of Revenue ("Director"). We affirm.

On September 25, 1993, licensee was arrested for driving while in an intoxicated condition. After a breath analysis test was conducted on licensee, it was determined that licensee had been driving with a blood alco-

hol concentration ("BAC") greater than .10 percent, in violation of RSMo § 302.505.[1] Licensee was issued a "Notice of Suspension/Revocation" of his driver's license that same day.[2]

Upon licensee's request, an administrative hearing was held on November 10, 1993, to determine whether there was probable cause to believe licensee was driving with a BAC of .10 percent or more. On November 19, the Department of Revenue sustained the revocation of licensee's driver's license. Licensee petitioned for a trial *de novo* in circuit court. The cause was tried April 13, 1994.

The arresting officer, Anthony Aubuchon, testified to the following at trial. On September 25, 1993, at approximately 7:00 P.M., Officer Aubuchon stopped licensee for driving the wrong way on a one-way street. He smelled alcohol on licensee's breath and noticed licensee's eyes were bloodshot. After licensee failed two of the three field sobriety tests conducted on him, Officer Aubuchon arrested licensee for driving while intoxicated. Licensee was then taken in another officer's car for a breath analysis test. Officer Aubuchon observed the "breathalyzer" test conducted upon licensee. In his police report, Officer Aubuchon stated that the test showed licensee had a BAC of .142.

Mack Moore, a prisoner processing clerk with the City of St. Louis, testified to the following. Moore held a Type III permit from the Missouri Department of Health and as such was authorized to administer breathalyzer tests. On September 25, 1993, he conducted a breathalyzer test on licensee, using an Alco–Analyzer 2000.

At the start of Moore's testimony, the court took judicial notice of 19 C.S.R. 20–30.010 through 19 C.S.R. 20–30.070, the administrative regulations governing blood alcohol testing promulgated by the Missouri Department of Health. 19 C.S.R. 20–30.011(5) states:

Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 C.S.R. 20–30.060.

19 C.S.R. 20–30.060(2) states:

When using the Alco–Analyzer, Model 2000, the procedures on the following form shall be performed and the form shall be completed: (see form # 2)

The "form # 2" referred to in 19 C.S.R. 20–30.060(2) contains a seven-step operational checklist and a certification section to be filled in by the operator. Step 7 of the checklist reads as follows:

7. After printout, tear off chromatogram and fill in name of operator and subject. Attach printout to this report.

After testing licensee, Moore filled out a form identical in all relevant aspects to form # 2. Moore checked off the box next to step 7. Moore also completed the certification section of the form. The BAC and date certified by Moore in this section were identical to the BAC and date on the printout. Moore also certified that Officer Aubuchon witnessed the test.

Attached to the form was a printout stating that on September 25, 1993, at "1945:29" (7:45 P.M.), the test subject's BAC was .142 percent. Neither Moore's name nor licensee's name was on the attached printout.

Moore testified on direct examination that the printout offered at trial was the one that came from the test on licensee. On cross-examination, Moore agreed there was "no way" he could be sure that he was the operator or that licensee was the person tested with respect to the printout, when neither of their names was written on the printout. However, on redirect, Moore stated he was sure that the offered printout was from the test he ran on licensee on September 25, 1993. Moore later testified the test he conducted on licensee on September 25, 1993 was the only breathalyzer test he ran on that date.

---

1. All statutory references are to RSMo Supp. 1993, unless otherwise indicated.

2. Although this was a notice of "suspension/revocation," the circuit court's order revokes licensee's license; further, licensee's notice of appeal states the appeal is from revocation of his driving privileges.

Director offered all certified documents relating to the case into evidence, including the form and printout, pursuant to RSMo § 302.312.[3] Licensee objected to admission of the breathalyzer test results, arguing proper foundation was lacking due to Moore's failure to adhere to the procedural requirements for the breathalyzer test.

On April 28, 1994, the circuit court issued an order sustaining the Department of Revenue and revoking licensee's driver's license. This appeal followed.

For his sole point on appeal, licensee contends the circuit court erred in admitting the breathalyzer test results, because the foundational requirements for admission of the test results had not been met. We disagree.

■ To establish a foundation for admission of breathalyzer test results, Director must show the test was performed (1) by following the approved methods and techniques of the Department of Health, (2) by an operator holding a valid permit, and (3) on equipment and devices approved by the Department of Health. *Spies v. Director of Revenue*, 854 S.W.2d 66, 68 (Mo.App.E.D. 1993).

■ "The testing process is a procedural requirement to insure accurate results." *Tomkins v. McNeil*, 782 S.W.2d 400, 402 (Mo.App.W.D.1989). An administrative procedural deficiency is not fatal to the admission of the results from a breath analysis test if there is unrefuted evidence of the accuracy of the test results, the qualification of the operator, and the proper functioning of the machine. *Shine v. Director of Revenue*, 807 S.W.2d 160, 162 (Mo.App.E.D.1991). Where the accuracy of the test results is not contested, it would go against the purpose of Missouri's law regarding drunk driving to nullify the suspension or revocation of a licensee's driver's license due to flaws in literal procedural observance. *Young v. Director of Revenue*, 835 S.W.2d 332, 335 (Mo.App.W.D. 1992).

■ Moore's failure to endorse his name or licensee's name on the printout had no effect on the functioning or accuracy of the Alco–Analyzer 2000. *See Tomkins*, 782 S.W.2d at 402. Nor does licensee contest the accuracy of the BAC indicated on the printout. Rather, licensee contests its characterization as *his* BAC, arguing Moore's failure to write licensee's name on the printout precludes the printout's admission as proof of licensee's BAC.

However, evidence was offered to prove the reliability of the printout as evidence of licensee's BAC. Officer Aubuchon testified that he observed Moore conduct the test on licensee on September 25, 1993, and his police report states licensee's BAC tested as .142. Moore testified that the printout was the result of the test he ran on licensee on September 25, 1993—the only test he conducted on that date. The time, date and BAC certified by Moore on the checklist form immediately following the test were identical to that on the printout.

"[W]e defer to the ability of the trial court to ascertain the facts and to judge the credibility of witnesses." *Thurmond v. Director of Revenue*, 759 S.W.2d 898, 899 (Mo.App. E.D.1988). All evidence supporting the judgment, as well as reasonable inferences therefrom, are taken as true. *Kimber v. Director of Revenue*, 817 S.W.2d 627, 630 (Mo.App. W.D.1991). Despite the absence of the names of Moore and licensee from the printout, the testimony offered at trial supported a finding that the printout was in fact the result of the breathalyzer test run by Moore on licensee on September 25, 1993. As such, the printout was properly admitted into evidence.

Licensee cites *Hadlock v. Director of Revenue*, 860 S.W.2d 335 (Mo. banc 1993), as support for his contention there was insufficient foundation to enter the printout. The printout at issue in *Hadlock* did not bear the name of the test subject as required by step 7 of the checklist, despite the operator's certification (by checking the box next to step 7) that the licensee's name *was* on the printout. *Id.* at 336. The Missouri Supreme Court

---

**3.** RSMo § 302.312 provides that properly certified copies of papers and documents filed with the Department of Revenue are admissible as evidence in the same manner and with the same effect as the originals.

noted in dicta that "it is not clear that the printout of the chemical test results attached to the form is [the licensee]'s." *Id.* at 338.

However, the Court expressly refrained from considering whether failure to endorse the licensee's name on the printout, alone, might preclude admission of the printout into evidence. *Hadlock,* 860 S.W.2d at 338. Further, the evidence in *Hadlock* consisted solely of certified copies of the printout, the operational checklist form, and a police report. Because there was no foundational testimony or evidence whatsoever—unlike the immediate case—the Court found the documents inadmissible. *Id.*

Our affirmance of the circuit court's ruling does not mean we encourage or condone further non-compliance with the applicable regulations by Director. *See Shine,* 807 S.W.2d at 163. However, on the facts of this case, we believe there was sufficient evidence to support the circuit court's finding that licensee violated RSMo 302.505. Point denied.

Based on the foregoing, we affirm the ruling of the circuit court.

REINHARD, P.J., and CRAHAN, J., concur.