**Kristopher L. HATFIELD, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. 19950.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 6, 1995.

Motion for Rehearing and/or Transfer
Denied Sept. 28, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rodney P. Massman, James A. Chenault, III, Sp. Asst. Attys. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Erik A. Bergmanis, Phillips, McElyea, Walker & Carpenter, P.C., Camdenton, for respondent.

FLANIGAN, Judge.

The Director of Revenue appeals from a judgment of the Circuit Court of Camden County, entered after a trial de novo, reinstating the driving privileges of respondent Kristopher Hatfield. On May 23, 1993, Hatfield was arrested, in Camden County, for driving while intoxicated. The Director suspended his driving privilege pursuant to the "Administrative DWI" law, §§ 302.500–302.541.[1] The suspension of Hatfield's license was based on § 302.505.1, which requires suspension upon a determination by the Department of Revenue "that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was ten-hundredths of one percent or more by weight of alcohol in his blood...."

The Director asserts that the suspension was proper, and the trial court erred in ruling otherwise, because the Director "established that there was probable cause to arrest respondent for driving while intoxicated and established a proper foundation for admission of the breath test results, in that Exhibit A [Form 2389—Alcohol Influence Report] was admissible, and the evidence established that the test was administered pursuant to the proper operating procedures regardless of whether Exhibit A was admitted."

Section 302.505.1 requires a two-part showing by the Director before a suspension or revocation may be instituted. *Cain v. Director of Revenue, State of Mo.,* 896 S.W.2d 724, 726 [3, 4] (Mo.App.1995). "The first requirement is that the driver was arrested upon probable cause that he or she was driving in violation of an alcohol related offense. The second required showing is that the driver had been driving at a time when his blood alcohol concentration was at least 0.10% by weight. These showings must be made by a preponderance of the evidence. This burden of proof remains with the Director at the trial de novo stage." *Id.* (authorities omitted).

"Upon review, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[2] (Mo. banc 1976)." *Stuhr v. Director of Revenue,* 766 S.W.2d 446, 448 (Mo. banc 1989). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is against the weight of the evidence and is wrong." *Murphy,* at 32[2]. For the reasons which follow, the judgment of the trial court is reversed because this court has a firm belief that the judgment is against the weight of the evidence and is wrong.

At the de novo hearing, the Director adduced the testimony of Rex Scism, the arresting officer, and respondent Hatfield testified in his own behalf. The evidence included the following:

**Rex Scism:** I am a trooper with the Missouri Highway Patrol. On May 23, 1993, I was employed as a deputy sheriff in Camden County. On that date, I was on patrol at 1:19 a.m. on North Highway 5, north of Camdenton. I noticed erratic movements

1. All references to statutes are to RSMo 1994, V.A.M.S.

displayed by [respondent's] vehicle. It swung rather wide for a left turn and nearly struck a raised abutment. It failed to stop for a stop sign at the intersection of Highway 5 and Route F and then made an abrupt stop in the middle of Highway 5. Upon noticing my approach, the driver backed onto Route F and turned south on Highway 5. I followed the vehicle. It turned abruptly, without signalling, into a church parking lot. I initiated a traffic stop. The driver was Hatfield. He had a strong odor of intoxicants about him. In his vehicle were several containers of beer. Hatfield was mumbling and I had difficulty understanding him. His eyes were bloodshot. I administered field sobriety tests and he did poorly on all of them. Based upon my observation of him and the field sobriety tests, I formed the opinion that he was intoxicated.

I arrested him and took him to the Camden County Jail. En route to the jail, Hatfield was in cuffs in the back of my patrol car. I can't remember seeing Hatfield with Skoal in his mouth prior to blowing into the breathalyzer machine. I can't remember him taking Skoal out of his mouth. If he had done it, I would have seen him because he was under my observation. I don't believe that he did. He would not have had the opportunity to take Skoal out of his mouth and throw it in the trash can. He was cuffed.

I gave him the Miranda warning and the Missouri Implied Consent Law. I am a Type III operator of a breathalyzer. I am authorized to operate the Model 900/900A Breathalyzer [the instrument used], and the BAC verifier. Hatfield agreed to take the test, which I administered. Exhibit A is a copy of the alcohol influence report which I conducted. I filled it out at or near the arrest of Hatfield. I am required, as part of my duties, to complete these forms. Page 3 is a check list for procedures outlining the operation of the breath instrument. That is the check list I was taught to use in my training. I completed each step before going to the next step. I observed Hatfield for 15 minutes prior to giving the test. During that time, Hatfield did not smoke or have any oral intake of any materials, nor did he vomit.

The machine gave me Hatfield's blood alcohol concentration by weight, and I recorded that reading both on Exhibit A, the alcohol influence report, and on the breathalyzer log. The BAC reading was .15 percent.

Director's Exhibit B, the breathalyzer maintenance report, admitted without objection, showed the breathalyzer had been inspected on May 8, 1993, and the report was satisfactory.

**Kristopher Hatfield:** Officer Scism stopped me on March 23, 1993, arrested me and placed me in cuffs and took me to the jail. Just prior to blowing into the breathalyzer, I had something in my mouth. I put Skoal in my mouth. Officer Scism asked me if I had anything in my mouth, so I said "Yes." He asked me to put it in the trash can, and then I blew. It was a regular pinch of Skoal. I removed it from my mouth in his presence and put it in the trash can. Between 15 and 30 seconds elapsed between the time I took the Skoal out of my mouth and the time I blew into the breathalyzer. I put Skoal in my mouth right before he stopped me. He stopped me at 1:19 and I blew into the machine at 1:55, so I had it in my mouth over 35 minutes.

Under cross-examination by the Director's counsel, Hatfield said that Officer Scism asked him if he had been drinking and he replied "Yes, beer." The following then occurred:

Q. And did he ask you how much, and did you say, "Six"?

A. I can't recall how many there was.

Q. Well, do you recall today how much beer you had to drink that night?

A. Do I know how much I had that night?

Q. Yes.

A. No, I don't at all.

Q. You can remember the Skoal, but you can't remember how many beers you had to drink?

A. Well, I always put a chew in when a cop stops or when you see lights."

Exhibit A, consistent with the testimony of Trooper Scism with regard to the test re-

sults, showed a blood alcohol concentration by weight of .15 percent.

When Exhibit A was offered into evidence by the Director, respondent objected to its admission on the following grounds: "[T]here clearly was not ample opportunity for Officer Scism to watch and observe Mr. Hatfield for 15 minutes," and "Officer Scism testified that he certified this report on page 4 where he signed his name, and where he signed his name he said he did that more than 24 hours after the time that he completed the test. And the rules and regs of the Department of Health say he has to do it at the time he does the test."

The trial court took the objection under advisement and later, in the judgment, sustained it. The judgment then recited: "The court therefore finds the issues in favor of [Hatfield] and against [the Director]."

"Automobile license revocation proceedings are administrative and civil in nature. They are not criminal or quasi-criminal. *State v. Byerly,* 522 S.W.2d 18, 20 (Mo. App.1975). In the context of the legislative purpose to remove dangerous drunk drivers from the roadways of Missouri, the strict letter of the D.W.I. law must yield to effectuate the purpose of the law. *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo. banc 1985)."

*Eckhoff v. Director of Revenue,* 745 S.W.2d 815, 817[1] (Mo.App.1988).

Cases involving proceedings of this nature include *Stuhr v. Director of Revenue,* 766 S.W.2d 446 (Mo. banc 1989), *Bautista v. Director of Revenue,* 843 S.W.2d 1 (Mo.App. 1992), *Young v. Director of Revenue,* 835 S.W.2d 332 (Mo.App.1992), *Shine v. Director of Revenue,* 807 S.W.2d 160 (Mo.App.1991), and *Tomkins v. McNeil,* 782 S.W.2d 400 (Mo.App.1989).

In *Stuhr,* at 449[2, 4], the court said:

"To establish a prima facie foundation for the admission into evidence of the results of a breathalyzer test, three things must be established. The test must be performed (1) by following the approved techniques and methods of the Division of Health, (2) by an operator holding a valid permit, (3) on equipment and devices approved by the division.

.   .   .   .   .

"A claim that test results are invalid will only succeed if there is some evidence that a malfunction occurred in spite of the adherence of the person administering the test to correct test procedure."

In *Stuhr,* the trial court refused to admit test results of a breathalyzer test into evidence because the test printout of the machine indicated the wrong time and date. This ruling was held to be erroneous because the time and date component of the machine was separate from the sample collection component, and the machine would function properly even if the time and date were incorrect.

In *Tomkins,* the Director's evidence showed a test result of .16 percent, but the machine failed to produce a printout of the test result. The trial court set aside the Director's order of suspension. In reversing that ruling, the court of appeals said there was no evidence to indicate a malfunction of the machine and that the printer malfunction did not invalidate the .16 percent reading.

At page 402[2] the court said:

"The court concludes there was unrefuted evidence to establish Tomkins having been intoxicated. To void the suspension would be to put literal procedural requirements above the legislative purpose of this law, to remove dangerous drunk drivers from Missouri roadways.

"The requirement of adhering to the division of health standards is to provide a substitute for the common law foundation for introduction in evidence of the alcohol in a person's system. The testing process is a procedural requirement to insure accurate results. With evidence of accuracy of the results here, it would go against the purpose of the law to void this suspension for the failure of the state to produce a printout." (citations omitted).

In *Shine,* the arresting officer administered the breath analysis test which showed a blood alcohol content of .164 percent. The officer testified that he followed the check list in administering the test. He further

testified that he failed to check the appropriate boxes on the form after the test was administered, but later did so prior to trial. The trial court set aside the suspension order because there was noncompliance with a Division of Health regulation pertaining to the form. Citing *Tomkins,* the court of appeals reversed the trial court's judgment. The court pointed out that the officer testified that he had followed the approved procedures. The court agreed with the Director's argument that the officer's testimony established compliance with the certification section of the operational check list, and that the failure to check the four boxes at the time of the test was not fatal because there was compliance with the steps delineated in the certification process.

In *Young,* the test result showed a blood alcohol level of .131 percent. The trial court upheld the Director's order of suspension. On appeal, the petitioner-driver claimed that the testing officer failed to use the official form prescribed by the Missouri Division of Health and instead used a form of the Kansas City Police Department. The court pointed out that the use of the wrong form may have been improper in the administrative phase of license suspension or revocation, but that was not so with respect to review of the judgment on trial de novo.

The driver did not challenge the qualifications of the officer to administer the test or the testing techniques, or claim that the test results were invalid. There was evidence that the officer observed the testing requirements of every procedure, and there was no evidence of machine malfunction.

In affirming the judgment sustaining the Director's order of suspension, the court said at 335:

"A court that favors the form or content of the official reports over witness testimony on the trial de novo so as to preclude evidence from the arresting officer as *Young* contends for invites error. To void a suspension at the trial de novo on flaws in literal procedural observances flouts the legislative purpose, 'to expeditiously remove the most dangerous drunk drivers from Missouri roadways.' In the circumstances of this case, where the accuracy of the test results are not contested, it would also contradict the very purpose that the testing procedures serve to nullify the suspension only because the report completed was not the official form." (citations omitted).

In *Bautista,* the trial court affirmed the Director's suspension order, and the driver appealed. As in *Young,* the driver argued that the breath analysis results were inadmissible because the form provided by the Kansas City Police Department did not comply with the regulation of the Missouri Department of Health. Citing *Young* and *Shine,* the court of appeals affirmed the trial court's judgment. The court said that the officer testified she followed all the steps listed on the form, and that testimony, coupled with the Kansas City Police Department form, showed compliance with the regulation.

The court rejected the driver's additional argument that the test results were inadmissible because the form was not completed by the officer who administered the test. The testing officer filled out only the certification section of the form, and the rest of the form was filled out by the arresting officer. The court said at 3: "Proof of compliance is not limited to the records themselves." The court held that the testing officer's testimony that she completed the steps listed on the form was sufficient to allow admission of the form into evidence.

The first objection of respondent to Exhibit A was factually unsound. Trooper Scism testified that he observed Hatfield for 15 minutes and, indeed, more than that, prior to administering the test. The second objection borders on being frivolous.

The testimony of Trooper Scism established the three things required by *Stuhr* for the admission into evidence of the results of the breathalyzer test. Hatfield adduced no evidence that the machine malfunctioned. Whether Trooper Scism signed Exhibit A in the middle of the night, or waited until the daylight hours in order to do so before a notary public, has no bearing upon the breathalyzer test results. The objections to Exhibit A were unsound but, as the Director properly argues, even if Exhibit A were ex-

cluded, the testimony of Trooper Scism, and indeed that of Hatfield, demonstrate that the judgment of the trial court is against the weight of the evidence and is wrong.

The judgment is reversed and the cause is remanded to the trial court with directions to enter a new judgment affirming the order of the Director.

MONTGOMERY, P.J., and GARRISON, J., concur.