

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| MATTHEW J. MOORE, | ) | No. ED107535 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | of St. Louis County |
| vs. | ) | 16SL-AC32752 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Honorable Richard M. Stewart |
| | ) | |
| Appellant. | ) | Filed: January 14, 2020 |

### OPINION

The fleeting life of a portable printer's battery gives rise to this appeal. In this driver's license suspension case, we are asked to determine whether the results of a blood alcohol content (BAC) breathalyzer test are admissible even though the printer connected to the Alco-Sensor IV breathalyzer machine lost power before it produced a printed ticket.

The Director of Revenue appeals from the judgment of the circuit court reinstating the driving privileges of Matthew J. Moore. Following a trial de novo held before a commissioner, the circuit court entered judgment adopting the commissioner's conclusion that the Director failed to make a prima facie case for the suspension of Moore's driver's license. The court found that although the breathalyzer test given to Moore showed his blood alcohol level exceeded the legal limit, the officer failed to strictly comply with the operational checklist set forth in 19 CSR 25-

30.060(3) because of the printer's loss of power. As a result, the court held the test results were per se unreliable and inadmissible.

The Director now asserts the circuit court erroneously applied the law in excluding the test results because there was no evidence the machine malfunctioned or that the digital readout showing Moore's BAC was 0.124% was not accurate or otherwise reliable particularly since the BAC on the breathalyzer ticket that was printed later once the printer was reconnected to electrical power matched the digital readout. We find the Director's argument is well taken and we reverse and remand for further proceedings consistent with this opinion.

## Background

On August 27, 2016, around 9:30 p.m., two St. Louis County police officers including Officer Keith Crawford, Jr., observed Moore commit multiple traffic violations while driving a black Honda civic northbound on Laclede Station Road near Watson Road in Webster Groves, Missouri. Moore remained stationary at a green traffic light for five seconds and, once he continued driving, his vehicle drifted into adjacent lanes without activating his turn signal. The officers pulled Moore over at the intersection of Laclede Station Road and Archbishop May Road.

Upon approach, the officers found Moore smelled strongly of alcohol; his eyes were bloodshot, watery, and glassy; his speech was slurred, stuttering, mumbling, and belching; and he could not walk without staggering and stumbling. Moore consented to multiple field sobriety tests that he was unable to complete successfully, including the Horizontal Gaze Nystagmus test, the Walk and Turn test, and the One Leg Stand test. He admitted he drank two beers and one shot of alcohol just prior to driving and being pulled over.

The officers placed Moore under arrest. Officer Blake Snyder responded to the scene to administer a breathalyzer test using the Alco-Sensor IV, which he was certified to operate. As

2

required, before administering the test, Officer Snyder observed Moore for 15 minutes starting at 10:02 p.m. and verified that Moore did not smoke, vomit, or have anything in his mouth during that time. When the 15-minute waiting period had ended at 10:17 p.m., Officer Snyder administered the Alco-Sensor IV breathalyzer test, to which Moore consented.

At 10:19 p.m. Officer Snyder obtained a breath sample from Moore and the breathalyzer machine indicated on its digital readout that Moore's blood alcohol level was 0.124%. But the battery on the printer connected to the breathalyzer machine became depleted before Officer Snyder could print the test results. Officer Crawford noted in his report that Officer Snyder advised he captured the breath sample prior to the printer losing power and that "[a]t no point was the [breathalyzer machine] compromised in any way during the testing process." Officer Snyder went immediately to the nearby Marlborough, Missouri City Hall where he restored power to the printer and produced a printed ticket of the test results showing Moore's blood alcohol level was 0.124% at 10:19 p.m.

The Department of Revenue suspended Moore's driving privileges and denied his request for reinstatement. Moore then filed a petition to set aside the suspension and a trial de novo was held before a St. Louis County Circuit Court commissioner. At trial, the Director adduced the following exhibits documenting that Moore's blood alcohol level was 0.124% at 10:19 p.m., on August 27, 2016: the alcohol influence report and arrest report prepared by Officer Crawford; the blood alcohol test report completed by Officer Snyder after administering the breathalyzer test; the printed ticket of test results Officer Snyder produced upon restoring power to the printer; and Officer Crawford's police report recounting Moore's arrest and Officer Snyder's administration of the breathalyzer test. Unfortunately, Officer Snyder was unable to testify at the trial de novo in

3

this case because he was killed in the line of duty in an unrelated incident less than two months after Moore's arrest.

Following the trial de novo, the commissioner issued findings and recommendations that Moore's driving privileges be reinstated. The commissioner found the loss of power to the printer constituted a deviation from the operational checklist set forth pursuant to 19 CSR 25-30.060(3) and rendered the test results unreliable and inadmissible. Accordingly, the commissioner concluded the Director failed to establish Moore's blood alcohol level exceeded 0.8% and did not meet its burden to establish a prima facie case for the suspension of Moore's driving privileges.

The circuit court adopted the findings and conclusions of the commissioner. The Director filed a motion for new trial or to amend the judgment on the grounds that the court erroneously applied the law by excluding the breathalyzer test results from evidence. That motion was denied, and this appeal follows.

## Standard of Review

We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo.banc 2010); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). To set aside a judgment as "against the weight of the evidence," we must have a firm belief that the judgment is wrong. *White*, 321 S.W.3d at 308.

We defer to the circuit court's credibility determinations in regard to factual disputes. *Id.* However, where factual matters are not contested, or where our review is of the circuit court's handling of an issue of law—such as its interpretation of a statute or regulation—we do not defer to the circuit court's findings. *Id.*

4

## Discussion

To establish a prima facie case to suspend or revoke a driver's license for driving while intoxicated, the Director must show by a preponderance of the evidence that (1) there was probable cause to believe Moore was driving a motor vehicle while intoxicated, and (2) Moore's blood alcohol level exceeded the legal limit. *Vanderpool v. Dir. of Revenue*, 226 S.W.3d 108, 109 (Mo.banc 2007) (citing § 302.505).[1] Here, there is no dispute that the police report established probable cause to believe Moore was driving while intoxicated. Officer Crawford's narrative related that he observed Moore commit multiple traffic violations prior to pulling him over; that once stopped, Moore was unable to complete all of the field sobriety tests successfully; and that he smelled strongly of alcohol, could not walk without staggering and stumbling, had slurred speech and bloodshot eyes, and admitted to consuming alcohol immediately before driving.

Nevertheless, breathalyzer test results are also essential to establish a prima facie case under § 302.505. *Whitworth v. Dir. of Revenue*, 207 S.W.3d 623, 626 (Mo.App.E.D. 2006). To establish a prima facie foundation for the admission of the results of a breathalyzer test, the Director must establish the test was performed: (1) following the approved techniques and methods of the Department of Health; (2) by an operator holding a valid permit; and (3) on equipment and devices approved by the Department of Health. *Id.*; *Vanderpool*, 226 S.W.3d at 109-10. Here, Officer Snyder held a valid Type III permit to perform the breath test on Moore, and such was admitted into evidence. The permit authorized him to administer tests using an Alco-Sensor IV, an approved breathalyzer. Thus, two of the three requirements for establishing a prima facie foundation for the admission of the test results into evidence were met.

---

[1] All statutory citations are to RSMo 2012 unless otherwise stated.

5

The question on appeal, then, is whether the Director met its third requirement of showing that the test was performed following the approved techniques and methods of the Department of Health. Missouri Department of Health rule 19 CSR 25-30.011(5) directs, "Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 25-30.060." Section 19 CSR 25-30.060(3) provides that "[w]hen using Alco-Sensor IV with printer, the procedures on the form included herein shall be performed and the form shall be completed (see form #8)."

For its part, Form #8 contains the following checklist:

1. Examination of the mouth conducted. If any substance is observed or indicated to be present, the substance observed or indicated must be removed prior to starting the 15 minute observation period.
2. Subject observed for at least 15 minutes by _____. No smoking, oral intake or vomiting during this time; if vomiting occurs, start over with 15 minute observation period.
3. Make sure printer is connected to Alco-Sensor IV.
4. Turn printer on.
5. Insert mouthpiece into Alco-Sensor IV.
6. Observe temperature display, make sure temperature reading is between 10°C and 40°C.
7. When "BLNK" is displayed on Alco-Sensor IV, air blank is taken.
8. When "TEST" is displayed on Alco-Sensor IV, take subject breath sample.
9. When "SET" is displayed on Alco-Sensor IV, press SET button.
10. When printer has completed printing test result, tear off tape and fill in subject and officer information.
11. Press red button to eject mouthpiece.
12. Turn printer off.
13. Attach printout to this report.

Here, the circuit court concluded in its judgment that the printer's loss of power constituted a deviation from the operational checklist. The court reasoned as follows:

While the 13 step checklist in the administration of the breath test in Form #8 was completed and the breath test ticket shows the pertinent information, the narrative further details that sometime between step 4 and step 10 that the printer "lost power" . . . . The operator then drove to a different location, "powered up the printer via the wall mount electric outlet, and printed the test results."
The Form #8 operational checklist requires the printer to remain on from the time it is turned on until the time it is turned off after the test result has been printed. In this instance, the printer either had no power at the time the operator turned it on, as required

6

in Step #4, or the printer lost power after it was turned on and before the results were printed. The printer had to be powered up in order to print the test result. The Form #8 checklist anticipates that the printer will remain on continually from the time it is turned on until . . . the test results are printed, and does not provide for powering up after the sample was taken, but before the test results are printed.

As the operational checklist was not strictly followed, the breath test is not admitted into evidence. While the officer contended in the narrative in the police report that it was the operator's opinion that the [blood alcohol level measurement] was not compromised at any time during the testing process, the Court does not find the breath test results reliable in light of the deviation from the operational checklist.

We agree with the circuit court that this checklist contemplates that the printer will be powered on through the completion of steps 4 through 12, and that as a result, when the printer lost power here Officer Snyder failed to strictly comply with the procedural requirements set forth by the Department of Health for administering a breathalyzer test using the Alco-Sensor IV.

Nevertheless, this Court has consistently held that the failure to strictly comply with the procedural requirements of breathalyzer testing does not always warrant the exclusion of breathalyzer test results where there has been *substantive compliance* with the rules promulgated by the Department of Health. *See, e.g., Shine v. Dir. of Revenue*, 807 S.W.2d 160, 162-63 (Mo.App.E.D. 1991) (finding court committed reversible error by excluding test results where arresting officer manifestly failed to comply with "literal procedural requirements" of operational checklist but there was "substantive compliance" with the rules). Indeed, because the rules were promulgated by the Department of Health to "insure accurate [test] results," where all the evidence indicates that the test results are reliable and any departure from the operational checklist is immaterial to the accuracy of the results, this Court has held that excluding the results constitutes reversible error. *Id.*; *cf. Stuhr v. Dir. of Revenue*, 766 S.W.2d 446, 449 (Mo.banc 1989) ("A claim that test results are invalid will only succeed if there is some evidence that a malfunction occurred in spite of the adherence of the person administering the test to correct test procedure.").

7

More specifically, Missouri courts have held that even where steps in the operational checklist require that test results be printed out, a printout is not required for admission of the test results where there was substantive compliance with the rules. *Tomkins v. McNeil*, 782 S.W.2d 400, 401-02 (Mo.App.W.D. 1989); *see also Grace v. Dir. of Revenue*, 77 S.W.3d 29, 33 (Mo.App.E.D. 2002) ("The admission of the printout is not necessary for Director to satisfy its prima facie burden of showing driver's blood alcohol content. Test results as recorded in the certified Alcohol Influence Report are sufficient to establish blood alcohol content even if the printout tape is illegible or not produced."). In *Tomkins*, the court held that where there is evidence of the *accuracy* of the results—in particular, that the digital readout on the breathalyzer machine only supported the arresting officer's observations of drunk driving—it is reversible error to effectively grant the driver a directed verdict by finding breathalyzer test results to be per se unreliable and inadmissible for failure to strictly comply with printing requirements on an operational checklist. 782 S.W.2d at 401-02 ("The testing process is a procedural requirement to insure accurate results. With evidence of accuracy of the results here, it would go against the purpose of the law to void this suspension for the failure of the state to produce a printout.").

We find *Tomkins* to be controlling here. In our case, as in that one, there was unrefuted evidence at trial to establish the test results were accurate and the driver was intoxicated, and no evidence to indicate any malfunction occurred in the operation of the breathalyzer machine itself. *See id.* at 402 ("There was no evidence at trial to indicate a malfunctioning of the BAC Verifier machine in the determination of the readout, and it is not contended on appeal the printer malfunction polluted the .16 reading."). Namely, as noted above, Officer Crawford related in his police report that he observed numerous signs that Moore was driving drunk, including his multiple traffic violations, his failure to pass field sobriety tests, and several other physical indicators. With

8

regard to the functioning of the breathalyzer machine, Officer Crawford noted in his police report that Officer Snyder complied with every step of the operational checklist that did not involve printing the test results; that Officer Snyder advised "[a]t no point was the [machine] compromised in any way during the testing process"; and that the machine properly captured a breath sample. Also, the record plainly shows the same reading of a blood alcohol level of 0.124% appeared on the breathalyzer's digital readout as on the printed ticket.

Therefore, we find the circuit court erroneously applied the law in excluding the test results for failure to strictly comply with the printing requirements of 19 CSR 25-30.060(3). Like the *Tomkins* court, we conclude any problem with printing results was irrelevant here and should not have prevented the Director from presenting valid evidence of Moore's blood alcohol level. *Id.* For as the trial judge in *Tomkins* correctly stated—before erroneously excluding breathalyzer test results for failure to strictly adhere to printing requirements—"the result of the test by the machine displayed on the digital readout is not dependent upon the printer function of the machine." *Id.*

We emphasize like the court in *Tomkins*, 782 S.W.2d at 402, that "[t]his decision is not meant to encourage or condone future non-compliance by law enforcement officials, nor to always require the driver to show prejudice of substantive rights when the testing procedures are not strictly followed." Rather, our decision is meant simply to vindicate our repeated holding that "[t]he object of the statute and its procedural process is to rid the highways of drunk drivers." *Shine*, 807 S.W.2d at 163.

This principle should not be relied on to justify the admission of unreliable breathalyzer test results; however, here like in *Shine*, where all the evidence indicated the results were accurate, "to void the suspension would be to put literal procedural requirements above the legislative purpose of this law, to remove dangerous drunk drivers from Missouri roadways." *Id.* (citing

9

*Collins v. Dir. of Revenue*, 691 S.W.2d 246, 252 (Mo.banc 1985)). Accordingly, we decline to conclude the Director's case was fatally short-circuited simply because the printer connected to the breathalyzer machine Officer Snyder used lost power.

## Conclusion

For the reasons stated above, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Robin Ransom, J., concur.