**STATE of Missouri, Appellant,**

v.

**Brandon Scott REGALADO,
Respondent.**

**No. WD 43156.**

Missouri Court of Appeals,
Western District.

March 19, 1991.

Richard G. Callahan, Pros. Atty., Mark A. Richardson, Asst. Pros. Atty., Jefferson City, for appellant.

Michael G. Berry, Hendren and Andrae, Jefferson City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

The State of Missouri's interlocutory appeal, authorized by § 547.200.1(2), RSMo 1986, and Rule 30.02, contests the trial court's order to exclude evidence of Brandon Regalado's urine alcohol content from his trial on a charge of driving while intoxicated in violation of § 577.010, RSMo 1986. The State contends that evidence of Mr. Regalado's urine alcohol content is admissible because his urine was collected, stored and tested in accordance with regulations adopted by Missouri's Department of Health and his urine alcohol content presents competent evidence bearing upon the question of whether Mr. Regalado was intoxicated. The trial court's order suppressing the evidence is affirmed, and the case is remanded for further proceedings.

On November 17, 1989, Trooper Thomas Horn of the Missouri State Highway Patrol arrived on the scene of a one-car accident in Cole County. Trooper Horn noticed marks on the road indicating that the automobile involved in the accident had crossed the road's center line, travelled through a ditch and struck a tree on the opposite side of the road. Trooper Horn approached the automobile's driver, Mr. Regalado, at the scene while he was inside an ambulance receiving treatment for his injuries. According to Trooper Horn, he detected the odor of alcohol about Mr. Regalado and the wrecked automobile.

The ambulance transported Mr. Regalado to an area hospital. Trooper Horn arrived at the hospital's emergency room and requested a sample of Mr. Regalado's urine for alcohol and drug content analysis. Since Mr. Regalado was unconscious, a medical technician used a catheter to acquire the urine sample. The technician placed Mr. Regalado's urine into a container and gave it to Trooper Horn.

Trooper Horn placed the urine sample in his patrol car and proceeded to another area hospital where he investigated a different traffic accident that had occurred that evening. Following his investigation of this other accident, Trooper Horn went home. Upon arriving at his home, Trooper Horn refrigerated Mr. Regalado's urine sample. According to Trooper Horn's testimony, approximately two hours elapsed between the extraction of the urine sample and its refrigeration. The following day Trooper Horn delivered the urine sample to the Highway Patrol's laboratory for testing.

Analysis of Mr. Regalado's urine indicated a urine alcohol content of .17 percent. Mr. Regalado was charged with driving while intoxicated. He filed a motion to suppress or, in the alternative, a motion in limine to exclude evidence of his urine alcohol content from the trial. The trial court held a hearing on the motion. Trooper Horn and William Marbaker, a forensic chemist with the Highway Patrol, testified at the hearing. Following the hearing, the trial court sustained the pretrial motion precluding evidence of Mr. Regalado's urine alcohol content on the grounds that the urine was not collected, stored, and tested in compliance with § 577.026, RSMo 1986, and regulations adopted by Missouri's Department of Health (19 CSR 20–30.070) and that the urine analysis results failed to properly reflect Mr. Regalado's blood alcohol content at the time he was operating the automobile.[1]

The State brings this interlocutory appeal contesting the trial court's decision to exclude at trial evidence of Mr. Regalado's urine alcohol content. The State contends the trial court erred in precluding the evidence because (1) the urine was properly collected, stored and tested, and (2) Mr. Regalado's urine alcohol content is competent evidence of his intoxication.

1. This court does not reach the question, nor express an opinion, whether the evidence properly reflects Mr. Regalado's blood alcohol level at the time he was operating the automobile.

The State first contends that Mr. Regalado's urine was properly collected, stored and tested. Mr. Regalado's urine was extracted from his body pursuant to Missouri's implied consent law, § 577.020, RSMo 1986. Chapter 577 provides that valid chemical tests of a person's urine must be performed in accordance with methods approved by the Department of Health. § 577.026. This statutory scheme further provides that such chemical tests of urine are admissible into evidence as proof of the amount of alcohol in a person's blood. § 577.037.1, RSMo Supp.1990.

■ The Department of Health enacted 19 CSR 20–30.070 to regulate the collection, storage and testing of urine. The regulation provides in pertinent part:

(B) Urine specimens shall be refrigerated immediately after collection or a preservative may be used that is appropriate for the test method being employed.

19 CSR 20–30.070(2). Missouri courts have previously determined that the state must demonstrate absolute and literal compliance with statutory provisions contained in Chapter 577 regulating the manner in which blood alcohol tests are administered prerequisite to introducing the test results into evidence. *See State v. Setter*, 763 S.W.2d 228 (Mo.App.1988). These statutory enactments serve as "a substitute for the common law foundation for the introduction of evidence of analysis for blood alcohol, and are mandatory." *State v. Peters*, 729 S.W.2d 243, 245 (Mo.App.1987). Similarly, where the Department of Health has enacted regulations concerning the proper methods of conducting blood alcohol tests as authorized by Chapter 577, including urine analyses, the state must demonstrate absolute and literal compliance with these regulations prerequisite to introducing the test results into evidence.

The State contends that the chemical analysis of Mr. Regalado's urine complied with 19 CSR 20–30.070(2), including the requirement that specimens be refrigerated immediately. The word "immediately" is an elastic term *requiring the courts to con*sider the given context when determining its meaning. *See State v. Harris*, 622 S.W.2d 742, 745 (Mo.App.1981). In *Harris*, the court considered a statute defining "forcible stealing" as immediately using physical force to overcome resistance to the taking of property. *Id.* at 743. The court, in *Harris*, determined that immediately, in this context, meant "without any intervening event or substantial lapse of time." *Id.* at 745. In *Harris*, the court concluded that the defendant immediately used physical force when involved in an altercation occurring in the parking lot of a department store moments after the defendant took clothing from the store. *Id.*

The court was also required to determine the meaning of "immediately" in *State ex rel. Wilson v. Hart*, 583 S.W.2d 550, 552 (Mo.App.1979). In *Hart*, the court considered a statute requiring the clerk of the circuit court to issue a summons "[i]mmediately after a petition [contesting an election] is filed. . . ." The court, in *Hart*, determined that in this context "immediately" meant that the summons had to be issued on the same day that the petition was filed.

In *Llewellyn v. Spangler*, 109 Mo.App. 396, 88 S.W. 1021, 1024 (1905), the court interpreted a statute requiring the clerk of the court to "immediately" prepare and transmit transcripts of the record to other courts where removal had been ordered. The court stated that "immediately," as used in this statute, meant within "such convenient time as is reasonably necessary for performing these duties." *Id.*

■ The regulatory requirement that the urine sample be immediately refrigerated or, alternatively, that a preservative be added is intended to retard the sample's degeneration for as long as possible to facilitate accurate testing. Approximately two hours elapsed between the urine sample's acquisition and its refrigeration because of the intervening traffic accident investigation. The State failed to introduce evidence demonstrating that the two-hour delay in refrigerating the urine sample did not result in the urine sample's substantial decomposition to Mr. Regalado's detriment. Thus, the failure to immediately refrigerate Mr. Regalado's urine as required by 19 CSR 20–30.070 and the State's failure to

produce evidence that, as an alternative to immediate refrigeration, an appropriate preservative was added to the urine sample imposes the legal conclusion that, absent appropriate evidence, the urine sample was tainted for the purpose of testing its alcoholic content. The trial court properly excluded evidence of Mr. Regalado's urine alcohol content because the chemical analysis was not performed in compliance with methods approved by the Department of Health.

The State also contends that evidence of Mr. Regalado's urine alcohol content is admissible as "other competent evidence" of Mr. Regalado's intoxication. Section 577.037, which provides for the admissibility of properly performed urine alcohol tests, also provides that the statute "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was intoxicated." The State contends that although the analysis of Mr. Regalado's urine may not have been conducted in accordance with 19 CSR 20–30.070, the test results are nonetheless other competent evidence of Mr. Regalado's intoxication.

As previously stated, regulatory and statutory requirements such as those found in 19 CSR 20–30.070 serve as a substitute, not an alternative, for the common law's foundation requirements for introducing evidence of such tests. *See Peters*, 729 S.W.2d at 245. The State failed to demonstrate the requisite foundation for introducing evidence of Mr. Regalado's urine alcohol content by failing to demonstrate compliance with 19 CSR 20–30.070. Evidence of Mr. Regalado's urine alcohol content, without a proper foundation, cannot be characterized as competent and is not admissible pursuant to § 577.037 as "other competent evidence." The trial court's order excluding evidence of Mr. Regalado's urine alcohol content is affirmed, and the case is remanded for further proceedings.

All concur.