Erbie J. WISDOM, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent–Appellant.

No. 22282.

Missouri Court of Appeals,
Southern District,
Division Two.

March 25, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant.

Charles T. Rouse, Salem, for Respondent.

ROBERT S. BARNEY, Judge.

The Director of Revenue (Director) appeals the circuit court's order restoring the driving privileges of Erbie J. Wisdom (Petitioner) after they had been revoked under the administrative revocation provisions of sections 302.500–.541.[1] Petitioner's revocation was sustained after an administrative hearing and Petitioner filed a petition for trial de novo in circuit court pursuant to section 302.535. After a hearing, the circuit court restored Petitioner's driving privileges. Director raises three points of trial court error, discussed below. We reverse and remand with directions.

State Highway Patrol Trooper, Karen McNair, testified that on January 18, 1997, she observed Petitioner's vehicle crossing a double yellow centerline. After stopping the vehicle, Trooper McNair testified that she smelled an odor of intoxicants about Petitioner and noticed his eyes were bloodshot and glassy. Petitioner admitted he had been drinking beer. Trooper McNair asked Petitioner to perform several field sobriety tests. Petitioner failed the horizontal gaze nystagmus test and was unable to successfully complete the finger-dexterity test. Petitioner was not required to perform the walk-and-turn or the one-leg stand tests because of his purported back problems. Trooper McNair placed Petitioner under arrest for driving while intoxicated and transported him to the Sheriff's Department where Petitioner consented to a breath test. Trooper McNair observed Petitioner for 15 minutes before the test and thereafter, following the required checklist per 19 CSR 25–30.060, gave Petitioner a breathalyzer test on a Data Master breath analyzer machine. The test result showed Petitioner's blood alcohol content by weight to be .174 percent.

At the trial de novo, Petitioner stipulated to the proper maintenance of the Data Master breath analyzer machine. The trial court also took judicial notice of the applicable regulations of the Department of Health, governing "the determination blood alcohol content by breath analysis." *See* generally, 19 CSR 25–30.011–.080. Petitioner did not take the stand and the only testimonial evidence elicited was that of Trooper McNair by Director. The trial court refused to admit evidence of Petitioner's breath test result, sustaining Petitioner's objection to the receipt of the result of the breath test into evidence on the basis that no foundation was laid that the machine was operating properly *at the precise moment of* Petitioner's testing. Additionally, the trial court sustained an objection to the receipt into evidence of Director's Exhibit A, consisting of Department of Revenue records offered under a business

---

**1.** All statutory references are to RSMo Cum. Supp.1996, unless otherwise indicated.

records affidavit. *See* §§ 490.680 and 490.692.

At the close of Director's case, the trial court sustained Petitioner's oral motion to dismiss by finding Director had failed to prove a prima facie case that Trooper McNair had probable cause to arrest Petitioner. Additionally, the trial court determined Director had failed to prove Petitioner was operating a vehicle with a blood alcohol concentration by weight of at least .10 percent.

■ The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Kienzle v. Director of Revenue,* 944 S.W.2d 326, 327 (Mo.App.1997). "A suspension of driving privileges pursuant to § 302.505 requires a two-part showing: (1) that the driver was arrested upon probable cause that he or she was driving in violation of an alcohol related offense; and (2) that the driver had been driving at a time when his or her blood alcohol concentration was at least .10% by weight." *Id.; Brandom v. Director of Revenue,* 931 S.W.2d 510, 511 (Mo.App.1996).

In Point One, Director asserts that the trial court erred in refusing to admit evidence of Petitioner's breath test result. Director argues that the breath analyzer, a Data Master, was properly maintained within 35 days of Petitioner's test and that the trooper had a valid Type III permit, had observed Petitioner for 15 minutes before the test, and had followed the required checklist while giving the test. In Point Two, Director maintains the trial court erred in refusing to admit evidence of Director's Exhibit A because these records were admissible under sections 490.680 and 490.692, RSMo 1994, as business records.[2] Both points will be considered together.

■ To lay a proper foundation for the admission of the breath analyzer test results, Director must demonstrate the test was performed: (1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department of Health. *Rogers v. Director of Revenue,* 947 S.W.2d 475, 477 (Mo.App.1997); *see also* § 577.020.

■ We first determine that the trial court erred in not receiving into evidence Director's Exhibit A. A proper foundation had been laid for the admission of the exhibit's records as business records. Section 490.680, RSMo 1994, provides a statutory exception to the hearsay rule, allowing for the admission of business records for the truth of the matter asserted if the custodian or other qualified witness testifies to the records' identity and mode of preparation. *Thebeau v. Director of Revenue,* 945 S.W.2d 674, 675 (Mo.App.1997); *Smith v. Director of Revenue,* 948 S.W.2d 219, 221 (Mo.App.1997). "[Section] 490.692.1 [RSMo 1994] permits the requisite foundation for the admission of business records to be laid by affidavit rather than by direct testimony. The affidavit must be substantially in the form and content of the affidavit set forth in the statute, and the affidavit and records must have been served on the opposing party at least seven days prior to the commencement of trial." *Thebeau,* 945 S.W.2d at 675; *see also* § 490.692.2–3, RSMo 1994.

■ Here the affidavit accompanying Director's Exhibit A mirrored the affidavit set forth in section 490.692.3, RSMo 1994. The record reflects that these records were timely served before the trial de novo. The trooper also identified and authenticated documents within the exhibit that she prepared. She further acknowledged that she was a

2. Director's Exhibit A was comprised of an Alcohol Influence Report and contained an operational checklist duly executed by Trooper McNair. Also included in Director's Exhibit A was a "Blood Alcohol Test Report—Datamaster" containing an additional operational checklist for a Datamaster breath analyzer machine and showed Petitioner's blood alcohol concentration at .174 percent. Additionally, Director's Exhibit

A reflected that Trooper McNair held a "Type III permit" entitling her to operate the following breath analyzers: "Breathalyzer 900, 900A, BAC Verifier and Data Master." *See* 19 CSR 25–30.041(1). In addition to other miscellaneous documents, Director's Exhibit A contained a "BAC DataMaster Evidence Ticket" showing a breath analysis for Petitioner of .174 percent BAC.

"qualified Type 3 Breath Analysis operator" on January 18, 1997. *See Miller v. Director of Revenue*, 719 S.W.2d 787, 790 (Mo. banc 1986). In either event, Petitioner did not object to the form of the affidavit nor that the records had not been timely served on him.

■ Additionally, as heretofore set out, Director's Exhibit B was received into evidence without objection. It consisted of a "DataMaster Maintenance Report" showing that certain maintenance checks had been performed by a qualified maintenance Type II permittee on January 13, 1997, five days before Petitioner was tested on the same machine. See 19 CSR 25–30.031(3)( [a] Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five (35) days). "[A]n approved machine that has had a maintenance check within 35 days is capable of giving accurate readings." *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340 (Mo. banc 1992). Therefore, in the instant matter, since Director offered "proof that a maintenance check [had] been performed on the machine within 35 days prior to the test in question, then the [Director] has demonstrated compliance with the maintenance check aspect of the regulation since evidence has been produced that the test was performed according to approved techniques and methods on a reliable machine."[3] *Id.* Director's Points One and Two are meritorious and are sustained.

In Point Three, Director argues the trial court erred in sustaining Petitioner's motion to dismiss and setting aside the suspension of Petitioner's driving privileges. Director asserts the trial court's judgment was against the weight of the evidence because Director had proved (1) that the arresting officer had probable cause to arrest Petitioner for driving while intoxicated, and (2) that Petitioner's blood alcohol content was at least .10 percent by weight. We agree.

■ The trial court observed that the primary reason Petitioner's motion to dismiss

was sustained was because Director had not proven Trooper McNair had probable cause for Petitioner's arrest. It has been held that "[p]robable cause may exist where a police officer observes a traffic violation or unusual operation of a vehicle and, upon stopping a motorist, notes indications of alcohol consumption." *Sullivan v. Director of Revenue*, 936 S.W.2d 580, 581 (Mo.App.1996). "[P]robable cause to arrest for an alcohol-related traffic violation which supports an administrative license suspension may be developed after a motorist has stopped." *Fischer v. Director of Revenue*, 928 S.W.2d 424, 425 (Mo.App.1996); *see also Riche v. Director of Revenue*, 987 S.W.2d 331, —— (1999)("neither section 302.505.1 nor the constitutional provisions upon which Riche relies require that the arresting officer's initial stop be based upon probable cause.") It is clear Director "does not have a burden of showing the lawfulness of or probable cause for a stop in order to revoke or suspend operating privileges for driving while intoxicated." *Kienzle*, 944 S.W.2d at 328. Indeed, "when judicially reviewing the administrative revocation of a driver's license, it is irrelevant whether the arrest was valid." *Id.*

■ Here, "the testimony of the arresting officer was unequivocal, and there was no contradictory evidence." *Fischer*, 928 S.W.2d at 425. Trooper McNair stopped Petitioner after she had observed him driving his vehicle across the double-yellow center line of the highway. He smelled of intoxicants and admitted he had ingested beers. Petitioner's eyes were blood shot and glassy and he failed two field sobriety tests. As to the required showing that Petitioner had been driving at a time when his blood alcohol concentration was above .10 percent by weight, we initially note that Trooper McNair was a Type III permittee, licensed to operate a DataMaster breath analyzer machine. Further, the record shows she went by the prescribed checklist in operating the machine and observed Petitioner 15 minutes prior to taking his breath analysis. The

---

**3.** Trooper McNair also testified that the machine performed an internal diagnostic check both before and after Petitioner's breath test in order to insure that it was working correctly. She stated that had the machine not been functioning properly, its computer would have alerted her and she would not have used the machine for Petitioner's test.

breath analyzer machine, which had been appropriately maintained and, indeed checked within five days of the administering of Petitioner's test, registered a blood alcohol concentration of .174 percent. Point Three is sustained.

In *Reinert v. Director of Revenue*, 894 S.W.2d 162, 164 (Mo. banc 1995), as here, the testimony of the arresting officer was unequivocal, and there was no contradictory evidence. In that case, the Missouri Supreme Court rejected a contention that the trial judge might not have found the officer's testimony to be credible. *Id.*; *see also Fischer*, 928 S.W.2d at 425. "Deference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict." *Fischer*, 928 S.W.2d at 425–26; *see also Kienzle*, 944 S.W.2d at 328. "Our standard of review does not permit this court to affirm the judgment of the trial court by merely disregarding all uncontradicted evidence that supports Director's contention that all elements for an administrative revocation of [Petitioner's] license were proven." *Kienzle*, 944 S.W.2d at 328. The evidence established that Petitioner was arrested upon probable cause that he was driving in violation of an alcohol related offense and that he had been driving at a time when his blood alcohol concentration was at least .10% by weight. *See id.* at 327; *Brandom*, 931 S.W.2d at 511.

The judgment of the trial court is reversed. The case is remanded to the trial court with directions to enter a judgment reinstating the suspension of Petitioner's driving privileges. *Kienzle*, 944 S.W.2d at 328.

SHRUM, P.J. and MONTGOMERY, J., concur.