Cary Lee **DILLON**, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

**No. WD 56123.**

Missouri Court of Appeals, Western District.

Sept. 7, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Timothy R. Cisar, Lake Ozark, for respondent.

Before BRECKENRIDGE, C.J., P.J., HANNA and ELLIS, JJ.

BRECKENRIDGE, Chief Judge, Presiding Judge.

The Director of Revenue appeals the judgment of the trial court reinstating Cary Lee Dillon's driving privileges. The Director claims that the trial court's finding that the Director failed to make a prima facie case for suspension of Mr. Dillon's driving privileges is based upon a misapplication of the law and is against the weight of the evidence. Because this court finds that the Director made a prima facie case for suspension of Mr. Dillon's driving privileges, the trial court's judgment is reversed and the cause is remanded for a new trial.

### Factual and Procedural Background

On August 15, 1996, at approximately 12:30 a.m., Officer Danny Pendleton of the Lake Ozark Police Department observed a blue Chevy S–10 pickup traveling at a speed in excess of the posted limit. After following the truck for approximately one-quarter mile with the patrol cruiser lights engaged, the officer observed the truck pull into a Jiffy Stop parking lot. As the driver alighted from the vehicle and began walking toward the store, the officer approached him. The officer asked the man for his driver's license and told him that he had been driving in excess of the speed limit. The man gave the officer his license, which revealed that he was Cary Dillon. According to Officer Pendleton, Mr. Dillon appeared nervous during the stop, and the odor of intoxicating liquor was emanating from his person. Officer Pendleton also observed that Mr. Dillon's speech was "a little slurred."

Officer Pendleton asked Mr. Dillon if he had been drinking and Mr. Dillon responded that he had consumed approximately three beers at Risky's, a local bar and restaurant. Officer Pendleton then asked Mr. Dillon to perform the three field sobriety tests which are standardized on the Missouri Alcohol Influence Report – the one leg stand, the walk-and-turn and the gaze nystagmus. Officer Pendleton was

trained to administer and evaluate all three field sobriety tests. Mr. Dillon failed the gaze nystagmus and the walk-and-turn tests. He did not satisfy two "pointers" of the one leg stand and "barely passed" that test. From his observation of Mr. Dillon, Officer Pendleton concluded that he was under the influence of alcohol. He then placed Mr. Dillon under arrest and took him to the Lake Ozark Police Department for processing and a breathalyzer test.

At the police station, Officer Pendleton read Mr. Dillon the *Miranda*[1] warnings and the Implied Consent statement from the Department of Revenue Alcohol Influence Report. He then asked Mr. Dillon if he would consent to a breathalyzer test to determine his blood alcohol content. Mr. Dillon agreed to take the test. Officer Pendleton, a certified operator of the breathalyzer machine, then prepared and used the BAC Data Master to test Mr. Dillon's blood alcohol content. Pursuant to the Department of Health regulations, Officer Pendleton stayed with and observed Mr. Dillon for fifteen minutes before administering the test. During that time, Mr. Dillon did not have anything to eat or drink, he did not vomit or smoke, or otherwise place anything in his mouth. While administering the test to Mr. Dillon, Officer Pendleton utilized the machine operational checklist set forth on the Department of Revenue Alcohol Influence Report, and performed each of the functions as listed on the report checklist. According to Officer Pendleton, the machine was not malfunctioning at the time of the test and Mr. Dillon blew a sufficient sample for testing. After Mr. Dillon blew into the breathalyzer machine, the machine indicated that his blood alcohol content was .15%.

The Department of Revenue suspended Mr. Dillon's license for driving under the influence. Mr. Dillon requested a trial de novo in the circuit court pursuant to § 302.535, RSMo Cum.Supp.1998. At the trial de novo, the circuit court received

evidence from the Director of Revenue. Mr. Dillon objected to the evidence relating to his blood alcohol content. He argued that Officer Pendleton used the Department of Revenue form rather than the form mandated by the Department of Health to record his compliance with the Department of Health regulations for administering a breathalyzer test. At the close of the trial, the judge told the parties he would take Mr. Dillion's objection under advisement, and granted Mr. Dillon one week to submit additional evidence regarding the proper form which should have been used. The judge also stated that the question presented in the case was whether the officer followed the proper procedure in administering the breathalyzer test, and not whether the breathalyzer test results were valid.

Mr. Dillon did not submit any additional evidence to the court regarding the proper operational checklist form to be used in administering a breathalyzer test. Nevertheless, the trial court returned a judgment in favor of Mr. Dillon, reinstating his driving privileges. The Director of Revenue appeals the trial court's judgment.

## Standard of Review

After an adverse judgment from the Department of Revenue, a driver may petition for a trial de novo in the circuit court. Section 302.535.1, RSMo Cum. Supp.1998; *Zwyers v. Director of Revenue, State of Mo.*, 948 S.W.2d 473, 474 (Mo.App. 1997). On appeal, this court reviews the circuit court's judgment and not the administrative order. *Id.* Review of the trial court's judgment after a trial de novo is governed by the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Kimber v. Director of Revenue,* 817 S.W.2d 627, 629 (Mo.App.1991). The decision of the trial court must be affirmed on appeal unless there is no substantial evidence to support the decision, the decision is against the weight of the

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.      1602, 16 L.Ed.2d 694 (1966).

evidence, or the trial court erroneously declares or applies the law. *Id.* at 629–30. This court will accept as true "the evidence supporting the circuit court's judgment, as well as all reasonable inferences drawn from such evidence," and will disregard all contrary evidence and inferences. *Id.* at 630.

■ At a trial de novo, the Director has the burden of proving by a preponderance of the evidence a prima facie case for suspension of a driver's license. *Haas v. Director of Revenue*, 975 S.W.2d 483, 484 (Mo.App.1998). The Director satisfies this burden "by presenting evidence that: (1) the driver was arrested upon probable cause that he or she was driving in violation of an alcohol-related offense; and (2) the driver had been driving with a blood alcohol content of .10 percent or greater." *Id.* "When the Director makes a prima facie case, the burden then shifts to the driver to present evidence to rebut the prima facie case by a preponderance of the evidence." *Bramer v. Director of Revenue*, 982 S.W.2d 793, 794 (Mo.App.1998).

### The Director Made a Prima Facie Case for Suspension

■ In this case, the evidence established the first prong of the Director's prima facie case for suspension of Mr. Dillon's driver's license, namely, that Officer Pendleton arrested Mr. Dillon upon probable cause that he was driving while intoxicated. To support the second prong of the prima facie case, the Director offered Mr. Dillon's breathalyzer test results. "To establish a foundation for admission of breathalyzer test results, the Director must demonstrate the test was performed: (1) by following the approved methods and techniques of the Department of Health, (2) by persons holding a valid permit and (3) on equipment and devices approved by the Department of Health." *Butts v. Director of Revenue*, 980 S.W.2d 187, 188 (Mo.App.1998).

■ At the trial de novo, the Director attempted to offer the Department of Revenue operational checklist form to demonstrate Officer Pendleton's compliance with the Department of Health regulations with regard to the administration of a breathalyzer test. Mr. Dillon argues that, pursuant to § 577.020, RSMo 1994, Officer Pendleton was required to use the Department of Health operational checklist form. Without the Department of Health form in evidence, Mr. Dillon argues that the Director failed to establish the proper foundation for the breathalyzer test results and, therefore, the Director failed to produce evidence that he was driving with a blood alcohol level in excess of .10 percent, the second prong of the Director's prima facie case. The Director argues that the arresting officer did not have to use the Department of Health form in order to demonstrate compliance with the Department of Health regulations. The Director claims that the burden of establishing the prima facie case was sustained by the Director's producing evidence at trial, specifically, Officer Pendleton's testimony and the Department of Revenue operational checklist for administering a breathalyzer test which indicated that Officer Pendleton complied with the Department of Health regulations.

In *Young v. Director of Revenue*, 835 S.W.2d 332 (Mo.App.1992), a case factually similar to the present case, this court addressed the issue of whether the Department of Health form must be used for the admission of breathalyzer test results. In *Young*, the arresting officer completed the operational checklist for administering a breathalyzer test on a Kansas City Police Department form. *Id.* at 333. The checklist on the KCPD form and the results of the breathalyzer test, indicating the driver had a blood alcohol level of 0.131%, were received in evidence. *Id.* At that time, and for the machine used in that case, the form required by the Missouri Department of Health was Blood Alcohol Test Report # 3. *Id.* Both the KCPD form and the Department of Health form contained a checklist

specifically for the machine that the arresting officer used to administer the breathalyzer test. *Id.* The driver argued that because the KCPD form was not the form prescribed by the Department of Health's official regulation, it was not proper foundational evidence. *Id.* Comparing the two forms, the trial court concluded that the form used by the arresting officer complied with the regulatory requirements and, accordingly, sustained the Department of Revenue's suspension of the driver's license. *Id.* at 333–34.

Upon appeal to this court, the driver in *Young* maintained that strict compliance with the Department of Health regulations was required for the Director to introduce breathalyzer results and sustain the Director's burden of proof at a trial de novo. *Id.* at 334. This court rejected that claim, finding as follows:

> To void a suspension at the trial de novo on flaws in literal procedural observances flouts the legislative purpose, "to expeditiously remove the most dangerous drunk drivers from Missouri roadways." In the circumstances of this case, where the accuracy of the test results are not contested, it would also contradict the very purpose that the testing procedures serve to nullify the suspension only because the report completed was not the official form.

*Id.* at 335 (internal citations omitted). Because the KCPD form and the arresting officer's testimony established that the arresting officer performed every testing procedure listed on the Department of Health form, this court held that the breathalyzer test results in *Young* were, in fact, admissible, and thus established the Director's prima facie case. *Id.* The same result was reached under similar facts in *Bautista v. Director of Revenue*, 843 S.W.2d 1, 3 (Mo.App.1992) (holding that deficiencies in form used by Kansas City Missouri Police Department were overcome by officer's testimony of compliance with Department of Health regulations).

At a trial de novo, the Director may satisfy the burden of showing compliance with the Department of Health regulations through all available evidence. *Brussel v. Director of Revenue*, 962 S.W.2d 454, 456–57 (Mo.App.1998). The regulatory requirements are a substitute method of establishing a common law foundation for the admission of evidence. *Tomkins v. McNeil, Director of Revenue*, 782 S.W.2d 400, 402 (Mo.App.1989). When the substitute method fails, the Director may still rely upon the common law and establish a foundation by any probative evidence. *See id.; Brussel*, 962 S.W.2d at 456–57. "A court that favors the form or content of the official reports over witness testimony on the trial de novo so as to preclude evidence from the arresting officer ... invites error." *Young*, 835 S.W.2d at 335.

Here, the Director offered Officer Pendleton's testimony and the Department of Revenue form as foundational evidence indicating that the operational checklist requirements of the Department of Health were met. Although this evidence is not in the form prescribed by the Department of Health regulations, when evidence other than the Department of Health form proves substantive compliance with the regulations' requirements, any deviation in the form used to report the compliance is not fatal to the suspension of the driver's license. *Id.* To require technical compliance with the regulation would defeat the purpose of the drunk driving statute. *Id.; Shine v. Director of Revenue*, 807 S.W.2d 160, 163 (Mo.App.1991); *Tomkins*, 782 S.W.2d at 402. The breathalyzer machine operational checklist form Officer Pendleton used contained every testing procedure listed on the Department of Health breathalyzer machine operational checklist. The Director established that the Department of Health regulations were substantively followed. Therefore, the breathalyzer test results were admissible evidence which established the second prong of the Director's prima facie case, and the trial court erred in finding to the contrary.

Because this court finds that the Director made a prima facie case for suspension of Mr. Dillon's driving privileges, the judgment of the trial court is reversed and the cause is remanded for a new trial.

All concur.