Joseph POTTS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 57400.

Missouri Court of Appeals,
Western District.

July 18, 2000.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea L. Mazza, Asst. Atty. Gen., Jefferson City, for respondent.

Before Presiding Judge VICTOR C. HOWARD, Judge JOSEPH M. ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant Joseph Potts was convicted after a jury trial of one count of driving while intoxicated, in violation of Section 577.010 RSMo 1994, in the Circuit Court of Livingston County, Missouri. Mr. Potts was sentenced, as a prior and persistent offender under Section 577.023 RSMo 1994, to five years imprisonment. He filed a motion for post-conviction relief under Rule 29.15, which was denied after an evidentiary hearing. He appeals the denial of his Rule 29.15 motion for post-conviction relief, alleging only that he was denied effective assistance of counsel on direct appeal from his conviction for driving while intoxicated, in that his counsel failed to argue that the breathalyzer results admitted into evidence at his trial lacked a proper foundation because the State had failed to meet its burden of demonstrating absolute and literal compliance with applicable state regulations. Because we find that Mr. Potts has failed to show that his appellate counsel was ineffective, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence adduced at Mr. Potts' trial, considered in the light most favorable to the verdict, was as follows:

On January 3, 1995, Officer James Young of the Hamilton, Missouri Police Department observed Defendant almost hit another car and cross the center line several times. Officer Young then activated his lights and siren, but Mr. Potts did not immediately pull over. When Mr. Potts eventually stopped his vehicle, he removed the keys from the ignition, and threw them onto the dashboard of his vehicle. Officer Young, upon approaching the vehicle on foot, noticed that Mr. Potts was slumped over in his seat, and had a flushed face. Mr. Potts' speech was also slurred,

and he was unable to maintain his balance. Officer Young could also smell the odor of intoxicants emanating from Mr. Potts. He asked Mr. Potts to perform a series of field sobriety tests, but Mr. Potts refused, stating that he could not do them. Officer Young then arrested Mr. Potts on suspicion of driving while intoxicated, and administered a breathalyzer test to Mr. Potts. The machine registered Mr. Potts' blood alcohol content to be 0.31 percent. Throughout this encounter, Mr. Potts was antagonistic, and used profane language.

At Mr. Potts' trial for driving while intoxicated, his defense counsel made a pretrial motion to exclude from evidence the result of the breathalyzer test administered by Officer Young, arguing that the State could not establish a sufficient foundation for its introduction under Section 577.020.3 and regulations issued under it governing performance of chemical tests of a person's breath. To demonstrate a foundation for the breathalyzer results, the State produced a copy of the maintenance reports from the maintenance and calibration tests conducted on the machine which was used to test Mr. Potts' breath after his arrest. Defense counsel asserted in its motion in limine that this foundation was insufficient because 19 CSR 20–30.031(3) (now codified at 19 CSR 25–30.031(3)) was issued pursuant to Section 577.020, and Missouri courts require "absolute and literal compliance" with such regulations. He argues that they require that individuals qualified to conduct breathalyzer tests retain original records of regular maintenance checks performed upon the breathalyzer, and that those individuals submit a copy of the report to the Department of Health within fifteen days from the date of the maintenance check. The regulation provided specifically that:

A Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five (35) days. The permittee shall retain the original report of the maintenance check and submit a copy of the report so that it shall be received by the department within fifteen (15) days from the date the maintenance check was performed.

19 CSR 20–30.031(3).

Mr. Potts' counsel argued that, because the permittee had retained the copy of the report and sent the original to the department, rather than vice versa as required by the regulation, he did not absolutely and literally comply with 19 CSR 20–30.031(3). Therefore, he argues, an insufficient foundation was laid for introduction of the breathalyzer results under Section 577.020 because the regulations issued under it were not absolutely and literally complied with, and the judge thus erred in permitting introduction of those results.

In opposition to defense counsel's motion in limine, the prosecutor informed the court that the sheriff had inadvertently sent the original maintenance reports to the Department of Health, and had retained photocopies of the maintenance record in the Sheriff's Department files. Upon an attempt to recover the original record, the State discovered that the Department of Health had disposed of the original record. The trial court overruled defense counsel's motion. During trial, defense counsel renewed his motion in limine. Corporal Mitch Allen of the Missouri Highway Patrol testified outside the hearing of the jury that he tested the breathalyzer used on Mr. Potts on December 20, 1994, and again on January 23, 1995, both before and after Mr. Potts's breathalyzer test on January 3, 1995. Corporal Allen acknowledged, however, that he did not retain the original maintenance check report, but instead retained photocopies of the report, and sent the original to the Department of Health. The trial court again denied defense counsel's motion in limine. Over defense counsel's

objection, Officer Young then was permitted to testify before the jury that he conducted a breathalyzer test on Mr. Potts, and that the results indicated Mr. Potts had a blood alcohol content at the time of the traffic stop of 0.31 percent.

At the close of all evidence and after argument of counsel, the jury returned a guilty verdict. Mr. Potts was sentenced, as a prior and persistent offender, to five years imprisonment. On direct appeal to this Court, Mr. Potts' appellate counsel raised a single issue: that the trial court erred in finding Mr. Potts to be a persistent offender pursuant to Section 577.023 RSMo. Counsel chose not to raise or argue the issue concerning the lack of proper foundation for the breathalyzer evidence admitted against Mr. Potts. On March 25, 1997, this Court affirmed Mr. Potts' conviction and sentence in a *per curiam* order. *State v. Potts,* 941 S.W.2d 12 (Mo. App. W.D.1997).

Mr. Potts subsequently filed a motion for postconviction relief pursuant to Rule 29.15, alleging ineffectiveness of his counsel on direct appeal for failing to argue that the court erred in permitting the State to introduce the breathalyzer results at his trial despite the fact that the State was unable to demonstrate absolute and literal compliance with applicable state regulations for performance of breathalyzer maintenance. On April 7, 1999, an evidentiary hearing was held on Mr. Potts' 29.15 motion. Mr. Potts' trial counsel testified at the hearing that he properly preserved the issue of improper foundation for the breathalyzer results, in that he filed a motion in limine, objected again when the evidence was admitted at trial, and included the allegation of error in his motion for new trial.

On May 17, 1999, the motion court issued findings of fact and conclusions of law denying Mr. Potts' motion for post-conviction relief. This appeal follows.

## II. BURDEN OF PROOF AND STANDARD OF REVIEW

▮ As we stated in *Ham v. State,* 7 S.W.3d 433 (Mo.App. W.D.1999):

> We will affirm the motion court's denial of a claim of ineffective assistance of counsel under Rule 29.15 unless its findings of fact or conclusions of law are clearly erroneous. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987); *State v. Lay,* 896 S.W.2d 693, 701 (Mo.App. W.D.1995); *State v. Landers,* 969 S.W.2d 808, 812 (Mo.App. W.D.1998); *Meade v. State,* 779 S.W.2d 659, 660 (Mo.App. E.D.1989). A judgment is clearly erroneous when, in view of the entire record, "the reviewing court is left with the definite and firm impression that a mistake has been made." *Landers,* 969 S.W.2d at 812. The findings of the motion court are presumed correct. *Id.; Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991).
>
> The movant, by a preponderance of the evidence, bears the burden of proof to establish ineffective assistance of counsel. Rule 29.15(i); *State v. Nunley,* 923 S.W.2d 911, 922 (Mo. banc 1996); *Landers,* 969 S.W.2d at 812.... To meet this burden, the movant must satisfy a two-pronged test. First, movant must show that his or her lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances. Second, the movant must show that he or she was prejudiced by counsel's failures. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders,* 738 S.W.2d at 857.
>
> With respect to the first prong, there is a strong presumption that counsel was competent. *Landers,* 969 S.W.2d at 812; *State v. Suter,* 931 S.W.2d 856, 866 (Mo. App. W.D.1996). With respect to the second prong, to support a claim of prejudice, movant must show that, but for counsel's incompetence, the outcome would have been different. *State v. Brown,* 902 S.W.2d 278, 295 (Mo. banc

1995); *State v. Ashley*, 940 S.W.2d 927, 933 (Mo.App. W.D.1997).

*Id.* at 438.

### III. APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO RAISE THE ISSUE OF ABSOLUTE AND LITERAL COMPLIANCE WITH CERTAIN REGULATIONS GOVERNING BREATHALYZER TESTS

■ Mr. Potts alleges that his appellate counsel was ineffective for failing to raise on his direct appeal an allegation that the trial court erred in admitting breathalyzer results into evidence, on the ground that the results lacked a proper foundation, in that such an allegation was meritorious and would have resulted in a reversal of his conviction and sentence. In support, he directs us to prior cases which he says hold that, as a prerequisite to introducing breathalyzer test results into evidence, "the state must demonstrate absolute and literal compliance" with Department of Health regulations promulgated pursuant to statutory provisions contained in Chapter 577 RSMo regulating the manner in which blood alcohol tests are administered. *See, e.g., State v. Regalado*, 806 S.W.2d 86, 88 (Mo.App. W.D.1991). He alleges that, because 19 CSR 20–30.031(3) – now codified at 19 CSR 25–30.031(3) – requires that individuals qualified to conduct breathalyzer tests retain original records of regular maintenance checks performed upon the breathalyzer instruments, and because no such original was retained by the person who conducted the maintenance check in this case, but was instead sent to the Department of Health, the State failed to "absolutely and literally comply" with relevant regulations, thereby rendering the breathalyzer results in his case inadmissible. Since this issue was preserved below, he argues that, had it been raised on appeal, it would have resulted in reversal of his conviction.

We disagree. The premise for all of Mr. Potts' arguments is that our cases require the State to prove absolute and literal compliance with all Department of Health regulations concerning breathalyzers in order to introduce evidence of the breathalyzer results at trial. In so arguing, Mr. Potts has erroneously failed to distinguish between cases discussing the degree of compliance required in regard to regulatory requirements governing the actual *performance* of maintenance tests of breathalyzers, and cases discussing the degree of compliance required in regard to regulatory requirements governing collateral issues which do not affect the actual performance or validity of the test itself.

■ The procedures set out in Chapter 577 RSMo – and the regulations promulgated pursuant to it – serve as a substitute for the common law foundation for the introduction of evidence of analysis for blood alcohol, and their requirements are mandatory. `See Regalado`, 806 S.W.2d at 88. These statutes, dealing with testing methods necessary to validate results of breathalyzer tests, have equal applicability whether proceedings are criminal or civil. *Jannett v. King*, 687 S.W.2d 252, 254 (Mo. App. E.D.1985).

■ Section 577.020.3 specifically provides, in relevant part, that *"[c]hemical analysis* of the person's breath ... to be considered valid ... *shall be performed* according to methods approved by the state department of health ... by a person possessing a valid permit issued by the state department of health for this purpose." (emphasis added). This provision thus requires that, "[t]o lay a proper foundation for the admission of the breath analyzer test results, Director must demonstrate *the test was performed:* (1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department of Health." *Wisdom v. Director of Revenue*, 988 S.W.2d 127, 129 (Mo.App. S.D.1999) (emphasis added). *See also Rogers v. Director of Revenue*, 947 S.W.2d 475, 477 (Mo.App.1997). In apply-

ing this law, we have held that absolute and literal compliance with the regulations approved by the State Department of Health governing methods and devices for testing breathalyzer results must be followed. *See Regalado*, 806 S.W.2d at 88 (observing that "Missouri courts have previously determined that the state must demonstrate absolute and literal compliance with statutory provisions contained in Chapter 577 regulating the *manner in which blood alcohol tests are administered* prerequisite to introducing the test results into evidence") (emphasis added). *See also State v. Setter*, 763 S.W.2d 228, 230 (Mo.App. W.D.1988) (same).

Here, however, Mr. Potts does not allege that the breathalyzer test at issue was *performed* in a way that deviated from the methods or devices required under the relevant regulations. *See* 19 CSR 25–30.060 (setting forth, by reference to included checklists, requirements for a breathalyzer test to be properly conducted). Neither is it alleged that, prior to use, the device was improperly calibrated, or tested contrary to regulatory requirements, *see* 19 CSR 25–30.031(7), nor that the officer who performed the maintenance check was unqualified under the regulations, *see* 19 CSR 25–30.031(1) & (2), nor even that the breathalyzer used was not a device approved by the Department of Health, *see* 19 CSR 25–30.050. Rather, the error alleged is that the State failed to "absolutely and literally comply" with 19 CSR 20–30.031(3), in that the person who performed the test accidentally kept the copy and sent the original to the Department of Health, rather than vice versa.

Mr. Potts cites no cases which suggest that "absolute and literal compliance" is required as to matters collateral to *the proper performance of a blood alcohol test.* Moreover, on its face the statute states only that tests shall be *performed* according to department regulations, and nothing in it suggests that a minor variation in the manner of filing a report of that performance will render the results of the test inadmissible. No doubt for this reason, prior cases dealing with alleged error in admission of breathalyzer results where regulations were not exactly followed with respect to matters that did not pertain to the proper conduct of blood alcohol tests – such as portions of the regulations concerning the forms to be used to demonstrate that proper procedures were observed – have expressly dispensed with the requirement of "absolute compliance."

For example, in *Dillon v. Director of Revenue*, 999 S.W.2d 319, 322–23 (Mo.App. W.D.1999), Mr. Dillon requested at the circuit court a trial de novo of the Department of Revenue's suspension of his driver's license. *See id.* at 321. The circuit court received evidence of a breathalyzer test administered to Mr. Dillon, which consisted of a Department of Revenue form which detailed the testing officer's compliance, at the time the test was administered, with Department of Health regulations concerning the administration of a breathalyzer test. *See id.* at 322. Mr. Dillon objected to the admission of this form, arguing that, pursuant to Sec. 577.020, the officer was required to use the Department of *Health* operational checklist form, rather than the Department of *Revenue* form. *See id.* Because the officer failed to use the correct form, Mr. Dillon argued that the State could not demonstrate the proper foundation for the breathalyzer test results, in accordance with Department of Health regulations. *See id.*

This court rejected Mr. Dillon's argument, recognizing that "when evidence other than the Department of Health form proves substantive compliance with the regulations' requirements, any deviation in the form used to report the compliance is not fatal to the suspension of the driver's license." *Id.* at 323, *citing, Young v. Director of Revenue*, 835 S.W.2d 332, 335 (Mo.App. W.D.1992). See also *Wisdom*, 988 S.W.2d at 129–30 (officer's affidavit established sufficient foundation in license revocation proceedings for admission of

breathalyzer test results, when the affidavit reflected officer's qualifications to operate the breathalyzer test, and affidavit mirrored form and content required by statute). This Court further cited *Young* for the proposition that:

> To void a suspension at the trial de novo on flaws in literal procedural observances flouts the legislative purpose, "to expeditiously remove the most dangerous drunk drivers from Missouri roadways." In the circumstances of this case, where the accuracy of the test results are not contested, it would also contradict the very purpose that the testing procedures serve to nullify the suspension only because the report completed was not the official form.

*Dillon*, 999 S.W.2d at 323, *citing, Young*, 835 S.W.2d at 335.

Precisely the same rationale applies to the holding that Mr. Potts would have us adopt in the instant case. For these reasons, we reject Mr. Potts' argument that "absolute and literal compliance" is required in regard to regulations which do not deal with issues relating to the reliability or performance of the maintenance tests themselves. We concur with *Dillon* and similar cases that substantial compliance is sufficient.

 Finally, Mr. Potts suggests that, without a showing of absolute compliance with the statutory forms, the State did not present "the best evidence of the maintenance and calibration reports." It is unclear whether, by this argument, Mr. Potts is trying to raise a separate argument that the court erred in admitting this evidence because it should have been excluded under the best evidence rule. If so, he has failed to preserve it for appeal, since it is not mentioned in his Point Relied On and no authorities are cited in support of it. **Rule 84.04**. However, even had it been properly preserved, this argument would be without merit. As this Court has previously noted:

> [I]n proving the terms of a writing, where the terms are material, the origi-

nal writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent. *McCormick on Evidence*, Sec. 230 (4th ed.1992).

*Chevalier v. Director of Revenue*, 928 S.W.2d 388, 391–92 (Mo.App. W.D.1996). When the issue is whether a secondary copy can be admitted, the trial court may receive such secondary evidence if the original is unavailable and there is not a concern that the copy is not an accurate reproduction of the original. *Id.; State v. O'Dell*, 649 S.W.2d 504, 507 (Mo.App. S.D. 1983).

In this case, evidence was adduced at trial that the original document had been inadvertently sent to the Department of Health, and, although sought after, had been either discarded or misplaced, rendering it unavailable. In addition, there is no allegation by Mr. Potts that the copy admitted into evidence was anything but an accurate photocopy of the original. Thus, admission of the photocopied document at issue in the instant case did not violate the best evidence rule.

 It is well-settled that counsel may not be adjudged ineffective for failing to raise an argument that has no merit. *See, e.g., State v. Dreiling*, 830 S.W.2d 521, 526 (Mo.App. W.D.1992). For the reasons stated, we find that the issue which Mr. Potts alleges his counsel should have raised was meritless. Accordingly, Mr. Potts has failed to establish that he received ineffective assistance of counsel on the direct appeal of his conviction. For this reason, we affirm.

Judge JOSEPH M. ELLIS and Presiding Judge VICTOR C. HOWARD concur.