

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| VICTOR M. NIX, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD81816 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Opinion filed:  April 30, 2019 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE MARY F. WEIR, JUDGE**

Before Division Three:  Thomas H. Newton, Presiding Judge,
Anthony Rex Gabbert, Judge and Edward R. Ardini, Jr., Judge

The Director of Revenue ("Director") appeals the judgment of the Circuit Court of Jackson County setting aside the suspension of Victor Nix's ("Nix") driving privileges following his arrest for driving while intoxicated. The Director argues that the trial court erred when it excluded Nix's breath test results based on the failure of the officer who administered the test to sign the certification on the Blood Alcohol Test Report as required by Department of Health and Senior Services ("DHSS") regulations. We reverse the trial court's judgment and remand the case for a new trial.

## Factual and Procedural Background

On May 6, 2017, Officer Evan Tarwater with the Kansas City, Missouri Police Department observed a black Infiniti commit multiple traffic violations that included failing to stop at a stop

sign until traveling midway through the intersection. Officer Tarwater executed a traffic stop and identified Nix as the driver. Nix's young daughter was in the backseat. While engaging Nix in conversation, Officer Tarwater noted a strong odor of alcohol emanating from his breath and that his eyes were bloodshot and glassy. When asked if he had been drinking, Nix told Officer Tarwater that he had had a "couple beers."

Officer Tarwater returned to his cruiser to check information on his computer. When he returned to Nix's vehicle, he overheard Nix informing someone on his phone that he was going to jail and that he needed someone to come pick up his daughter. While listening to this conversation, Officer Tarwater noticed that Nix's speech was slurred. After Nix finished his call, he agreed to perform field sobriety tests.

Officer Tarwater had Nix complete the walk-and-turn test and the one-leg-stand test.[1] During the walk-and-turn test, Nix exhibited seven clues, including failing to maintain a heel-to-toe stance, slowing or stopping while completing the test, failing to touch heel-to-toe, stepping off the line, and raising his arms more than six inches. Two clues on the walk-and-turn test indicate probable intoxication.

Nix also performed the one-leg-stand test, but was unable to complete it. During the test, Nix swayed, failed to stand rigid with his leg locked out, used his arms for balance, raised his arms more than six inches, and put his foot down. Nix did not provide any physical reason for being unable to successfully perform the test.

Based on his observations of Nix during the traffic stop and Nix's performance during the field sobriety tests, Officer Tarwater believed that Nix was under the influence of alcohol. Nix was

---

[1] Officer Tarwater testified that he also conducted the Horizontal Gaze Nystagmus test, but he "missed the – the lack of smooth pursuit, I believe. And then on the maximum deviation, looking for nystagmus at maximum deviation, I didn't hold it quite long enough, I believe." The Director did not offer the results of this test at trial due to those issues.

arrested and transported to the police station where Officer Tarwater read him the implied consent warning.[2] Nix agreed to submit to a breath test, the results of which indicated a blood alcohol content of .200 percent.

Nix's driver's license was administratively suspended by the Director. Nix challenged the suspension by petitioning for a trial *de novo* pursuant to section 302.535, RSMo.[3] The Director presented the testimony of Officer Tarwater and a certified copy of the Director's file, which included, among other documents, the Alcohol Influence Report, Officer Tarwater's Incident and Crime Report, breath test maintenance reports and permits, and the Blood Alcohol Test Report – Intoxilyzer 8000 form.[4]

At trial, Officer Tarwater testified that he held a permit to operate the Intoxilyzer 8000[5] and, as it related to Nix's test, he completed the operational checklist and did not deviate from the DHSS-approved procedure for properly administering a breath test.[6] Officer Tarwater further testified that the testing instrument was functioning properly and that no radio transmission occurred inside the room where the test was being conducted. Officer Tarwater acknowledged that

---

[2] Missouri law states that any person who operates a motor vehicle on the public highways in Missouri has consented to a chemical test of that person's breath to determine the alcohol content of the person's blood "[i]f the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" § 577.020.1(1), RSMo (2016).

[3] All statutory references are to RSMo 2016. Section 302.535.1 provides that "[a]ny person aggrieved by a decision of the department [of revenue] may file a petition for trial de novo by the circuit court. The burden of proof shall be on the state to adduce the evidence. . . . The petition shall be filed in the circuit court of the county where the arrest occurred. The case shall be decided by the judge sitting without a jury."

[4] The Director also presented a video of the traffic stop. The video is not relevant to this appeal.

[5] The Intoxilyzer 8000 was the machine used to test Nix's blood alcohol level.

[6] Officer Tarwater testified that he examined Nix's mouth and found that no substance was inside; he completed a fifteen-minute observation period where Nix did not eat, drink, smoke, or vomit; the machine's power switch was in the "on" position and the screen displayed "Ready Mode"; he pressed the "start test" button; he entered his own and Nix's information; and, when the display read "Please Blow Until Tone Stops/R," Nix's breath sample was obtained.

he did not sign the certification on the Blood Alcohol Test Report form after he completed the test, but stated that he "verified the information when [he] completed the test[,]" and signed the Alcohol Influence Report, which also contained the test results and a certification.

Nix objected to the admission of the breath test results on foundational grounds based on Officer Tarwater's failure to sign the certification on the Blood Alcohol Test Report form.[7] The trial court sustained Nix's objection and excluded the breath test report and any testimony concerning the breath test results.[8]

Nix did not put on any evidence.

In its findings of fact and conclusions of law and judgment, the trial court set aside the suspension of Nix's driver's license, finding that "[t]here was credible evidence to support a finding that there was probable cause to arrest [Nix] for an alcohol-related traffic offense[;]" but "[t]here was an insufficient foundation for the admission of the test results as Officer Tarwater did not sign the certification on the Form 12 – Blood Alcohol Test Report – Intoxilyzer 8000, as required by DHSS 19 CSR 25-30.011(5)(A)." The Director appeals from that judgment.

### Standard of Review

"[Appellate courts] review the trial court's judgment in a . . . license suspension or revocation case like any other court-tried civil case." *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016) (citation omitted). "[T]he trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

---

[7] Nix did not otherwise object to the breath test results or the manner in which the test was administered.

[8] The Director made an offer of proof during which Officer Tarwater testified that the result of the breath test was .200 percent.

4

"Statutory interpretation is an issue of law that this Court reviews *de novo*." *Stiers*, 477 S.W.3d at 614 (citation omitted). "Regulations are interpreted according to the same rules as statutes." *Id*. (citation omitted). This case involves the application and interpretation of a regulation, therefore, this Court's review is *de novo*.

**Analysis**

In his sole point on appeal, the Director alleges that the trial court erred in setting aside the suspension of Nix's driving privileges, arguing that the officer's signature on the Blood Alcohol Test Report – Intoxilyzer 8000 form is not a foundational requirement to the admission of the blood alcohol test results because it is collateral to the proper administration of the test.

Under section 302.505.1, RSMo, the Director must suspend the license of any person "upon [his] determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight[.]" Therefore, at trial, the Director must present evidence showing "(1) probable cause for the arrest and [that] (2) the driver's blood alcohol level exceeded the legal limit." *Vanderpool v. Dir. of Revenue*, 226 S.W.3d 108, 109-110 (Mo. banc 2007) (citation omitted).

"To establish a foundation for admitting blood alcohol test results, the director must establish that the test was performed: (1) following approved techniques and methods of the division of health, (2) by an operator holding a valid permit, (3) on equipment and devices approved by the division." *Id*. (citation omitted). In the present case, it is undisputed that Officer Tarwater held a valid permit to operate the Intoxilyzer 8000 and that the breath test was conducted on equipment "approved by the division." Additionally, Nix has never alleged that Officer Tarwater *conducted* the blood alcohol breath test in a manner inconsistent with statutory or DHSS

regulatory requirements, and Nix does not argue that Officer Tarwater's failure to sign the certification contained on the Blood Alcohol Test Report affected the accuracy of the results. It is against this backdrop that we determine whether the failure to sign the certification contained on the Blood Alcohol Test Report mandated, as the trial court found, the exclusion of the breath test results.

Under section 577.020.3, "[c]hemical analysis of the person's breath, blood, saliva, or urine to be considered valid . . . shall be performed according to methods approved by [DHSS] . . . ." DHSS has enacted regulations specifying the approved methods for performing blood alcohol tests in 19 CSR 25-30.011-.080. Relevant to this case, 19 CSR 25-30.011(5)(A) states that "[a]n operational checklist, including the certification section, shall be completed with each breath test at the time of the test, by the individual performing the test."

"Missouri courts have previously determined that the state must demonstrate absolute and literal compliance with statutory provisions contained in Chapter 577 regulating the manner in which blood alcohol tests are administered prerequisite to introducing the test results into evidence." *State v. Regalado*, 806 S.W.2d 86, 88 (Mo. App. W.D. 1991). "These statutory enactments serve as 'a substitute for the common law foundation for the introduction of evidence of analysis for blood alcohol, and are mandatory.'" *Id.* (quoting *State v. Peters*, 729 S.W.2d 243, 245 (Mo. App. S.D. 1987)). "Similarly, where [DHSS] has enacted regulations concerning the proper methods of conducting blood alcohol tests as authorized by Chapter 577, . . . the state must demonstrate absolute and literal compliance with these regulations prerequisite to introducing the test results into evidence." *Id.* "But neither the relevant statutes nor the cited regulations make admissibility of the breath test dependent on whether collateral record-keeping requirements were met." *Carvalho v. Dir. of Revenue*, 2019 WL 1247086 *4 (Mo. banc Mar. 19,

6

2019). Instead, "on its face the statute states only that tests shall be *performed* according to department regulations, and nothing in it suggests that a minor variation in the manner of filing a report of that performance will render the results of the test inadmissible." *Potts v. State*, 22 S.W.3d 226, 231 (Mo. App. W.D. 2000) (emphasis in original).

Missouri courts have consistently held that exacting obedience to regulatory strictures relating to matters collateral to the performance of blood alcohol tests is not a foundational prerequisite to the admissibility of breath test results. For example, in *Shine v. Director of Revenue*, although the officer who administered the breath test failed to check the boxes on the operational checklist[9] contained on the Blood Alcohol Test Report, the eastern district of this Court found that the officer's testimony was sufficient to show compliance with the regulation and that the failure to complete the checklist was "not fatal because there was substantive compliance with the steps delineated in the certification process." 807 S.W.2d 160, 163 (Mo. App. E.D. 1991); *see also Hatfield v. Dir. of Revenue*, 907 S.W.2d 207 (Mo. App. S.D. 1995). Similarly, this Court, in finding that the failure to use a DHSS approved form did not render breath test results inadmissible, explained that "[a] claim that the test results are invalid avails only where there is some evidence of a malfunction despite adherence to correct procedure in the administration of the test." *Young v. Dir. of Revenue*, 835 S.W.2d 332, 333 (Mo. App. W.D. 1992); *see also Bautista v. Dir. of Revenue*, 843 S.W.2d 1 (Mo. App. W.D. 1992); *Dillon v. Dir. of Revenue*, 999 S.W.2d 319 (Mo. App. W.D. 1999).[10]

---

[9] The requirement that the officer performing the breath test complete the operational checklist is found in the same DHSS regulation that sets forth the certification requirement at issue in this appeal. *See* 19 CSR 25-30.011(5)(A).

[10] Deviation from the submission of the proper form relating to the maintenance of the machine used to conduct a breath test has also been found not fatal to the admissibility of the breath test results: "[W]e reject [the driver's] argument that 'absolute and literal compliance' is required in regard to regulations which do not deal with issues relating to the reliability or performance of the maintenance tests themselves." *Potts*, 22 S.W.3d at 232; *see also, Hearne v. Dir. of Revenue*, 559 S.W.3d 66, 70 (Mo. App. E.D. 2018) ("The trial court erred in excluding from evidence

In this case, there was no suggestion that Officer Tarwater failed to adhere to the procedures required for the proper *performance* of the breath test. Officer Tarwater completed the operational checklist and testified how he followed DHSS methods when he administered the breath test, including examining Nix's mouth; completing a fifteen-minute observation period where Nix did not eat, drink, smoke, or vomit; powering on and starting the machine; and obtaining Nix's breath sample. He then attached the results of the breath test to the Alcohol Influence Report. While Officer Tarwater failed to sign the certification section on the Blood Alcohol Test Report form, he did sign the Alcohol Influence Report, which itself contained a "CERTIFICATION OF EXAMINATION BY OPERATOR" that mirrored the certification language found on the Blood Alcohol Test Report. Under the circumstances, the failure to sign the certification on the Blood Alcohol Report was collateral to the performance of the breath test, did not impact the accuracy of the test results, and did not require the exclusion of the blood alcohol test results. The trial court's ruling to the contrary was erroneous.

Because the trial court excluded the breath test results on an erroneous basis, the trial court's judgment is reversed, and the case is remanded for a new trial.

Point granted.

### Conclusion

This matter is reversed and remanded for a new trial.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

the BAC results proffered by the Director on the ground that the maintenance report had not been filed timely with DHSS.").

8