

# SUPREME COURT OF MISSOURI
## en banc

MATTHEW CARVALHO,        )

           )         *Opinion issued March 19, 2019, and modified*

     Appellant,        )         *on the Court's own motion April 30, 2019*

           )

vs.                  )         **No. SC97394**

           )

DIRECTOR OF REVENUE,    )

           )

     Respondent.     )

### Appeal from the Circuit Court of Franklin County
### Honorable Stanley Williams, Judge

Matthew Carvalho appeals the suspension of his driver's license for driving while intoxicated. He argues the circuit court erred in admitting the report showing his blood alcohol content (BAC) was .087 percent, over the legal limit, because the director of revenue did not present evidence showing the report was timely filed with the department of health and senior services (DHSS). He also alleges the implied consent notice failed to comply with due process because it misled him in stating his license would be suspended immediately if he refused the breath test and in failing to tell him the consequences of taking the breath test. Finally, he alleges a later notice of suspension given him after he failed the breath test did not adequately inform him what the director of revenue would

have to prove to suspend his license.

This Court affirms. The filing of the report with DHSS is a collateral requirement that does not affect the performance of the test or its validity or accuracy, and, so, a failure to timely make that filing does not preclude admission of the report. Further, the implied consent notice was accurate in telling Mr. Carvalho his license would be suspended immediately should he refuse the breath test. The fact he would then be given a 15-day permit did not change that fact. Nothing in Missouri law or in the due process clause required the officer to tell Mr. Carvalho the consequences of taking the breath test, to which he had already had consented by driving on Missouri's roads. It was only as to the consequences of withdrawing that consent that he required notice. Finally, the notice of suspension accurately told Mr. Carvalho the facts required by statute to suspend his license and how to request a hearing. Due process did not require the officer to explain the law regarding the burden of proof the director would bear at that hearing.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

An officer from the Washington, Missouri, police department stopped Mr. Carvalho on May 10, 2017, for speeding. Mr. Carvalho had crutches in the car and stated he had been at a hospital due to a foot injury. The officer's report states he suspected Mr. Carvalho was driving while intoxicated based on his "very strong odor of intoxicants" and "watery, bloodshot, and glassy" eyes. Mr. Carvalho said he had not been drinking but declined to allow the officer to perform a horizontal eye nystagmus test, stating, "I ain't doing that, you can talk to my lawyer." In the incident report, the officer noted Mr. Carvalho slurred his words when he spoke. The officer asked Mr. Carvalho to exit the

vehicle, which he did with the assistance of his crutches. The officer asked Mr. Carvalho to provide a sample of his breath and advised him of Missouri's implied consent law. When Mr. Carvalho refused, the officer arrested him for speeding and driving while intoxicated and transported him to the Washington police station.

At the police station, the officer asked Mr. Carvalho to provide a breath sample and read him what is commonly referred to as "the implied consent warning" contained in the Missouri department of revenue alcohol influence report:

> You are under arrest. I had reasonable grounds to believe you were driving a motor vehicle while in an intoxicated or drugged condition. To determine the alcohol or drug content in your blood, I'm requesting you to submit to a chemical test of your breath. If you refuse to take the test, your driver's license will immediately be revoked for one year. Evidence of your refusal to take the test may be used against you in prosecution in a court of law. Having been informed of the reasons for requesting the test, will you take the test?

Mr. Carvalho asked to speak with an attorney. After doing so, Mr. Carvalho agreed to take the breath test. It showed Mr. Carvalho had a BAC of .087 percent. When a breath test shows a BAC above .08 percent, the officer:

> 2. … shall take possession of any driver's license issued by this state which is held by the person [and] … shall issue a temporary permit which is valid for fifteen days after its date of issuance and shall also give the person arrested a notice which shall inform the person of all rights and responsibilities pursuant to sections 302.500 to 302.540. … The notice shall also contain a detachable form permitting the arrested person to request a hearing.

*§ 302.520.1, .2.* [1]

As required by this statute, the officer took possession of Mr. Carvalho's license

and provided him with a 15-day temporary permit with notice that his "driving privilege will be suspended or revoked 15 days from the date of this notice if you do not request a hearing" and with a form explaining how to request a hearing. As required by section 302.510, the officer prepared and forwarded a report to the department of revenue. Mr. Carvalho does not contest these procedures were followed.

Based on the officer's report, the department determined Mr. Carvalho was arrested upon probable cause to believe he was driving a motor vehicle with a BAC above .08, and suspended his license.[2] Section 302.505.2 provides this determination "shall be final unless a hearing is requested and held. If a hearing is held, the department shall review the matter and make a final determination on the basis of evidence received at the hearing." Mr. Carvalho timely requested a hearing. *§ 302.530.* The hearing officer sustained the suspension. Mr. Carvalho then timely filed a petition for trial de novo. *§ 302.535.*

Section 302.312 provides, "Copies of all records lawfully filed in the offices of the department of revenue or the bureau of vital records of the department of health and senior services and copies of any records, properly certified by the appropriate custodian or the director," are admissible as evidence. Accordingly, the department submitted as exhibit A at the trial de novo a certified copy of the formal notice of suspension, as well

---

[1] All statutory references are to RSMo Supp. 2017, unless otherwise noted.
[2] Under section 302.525.2, the license will be suspended not revoked when, as here, the person's license has not been suspended within the previous five years for an alcohol related offense.

as the alcohol influence report, blood alcohol test report, uniform citation, DHSS "Intox EC/IRII Maintenance Report," incident report, arrest report, misdemeanor probable cause statement, and Mr. Carvalho's driving record. The department did not present any live testimony.

Mr. Carvalho objected to the admission of the portion of exhibit A containing his .087 BAC test results because he alleged admission would violate Missouri regulations and his due process rights:

> Your Honor, my only objection to Exhibit A would be any introduction of the alleged BAC result as they are found in that exhibit. Specifically, my objection would be that my client -- there was no probable cause for the arrest. My client's due process rights were violated in obtaining the breath result, and also the foundational requirements in 19 CSR 25-30.0313 were not satisfied.

Consistent with what he told the officer at the scene, Mr. Carvalho testified in his defense that he did not drink at all on the day of his arrest and had recently left the hospital after injuring his foot just prior to the time he was pulled over. Although he spoke with a lawyer after receiving the warning, he said he took the breath test based on use of the word "immediately" in the warning because he thought this meant if he did not take the test he would be prohibited from driving for the remainder of the year to work and to school and was concerned he would lose his job. He testified he did not realize he would get a temporary permit.

The circuit court sustained the suspension of Mr. Carvalho's driving privilege. Mr. Carvalho's timely appeal was transferred to this Court because Mr. Carvalho challenges the validity of sections 577.041, 302.505, and 302.574. *See* Missouri Const.

art. V, sec. 3.

## II.  STANDARD OF REVIEW

In this court-tried case involving a license revocation, "the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Dir. of Revenue, 321 S.W.3d 298, 307-08 (Mo. banc 2010).* "When facts are not contested and the issue is one of law our review is de novo, and no deference is given to the trial court's determination." *Stiers v. Director of Revenue, 477 S.W.3d 611, 614 (Mo. banc 2016)* (Quotation omitted). The Court reviews the constitutional validity of a statute de novo. *Hink v. Helfrich, 545 S.W.3d 335, 338 (Mo. banc 2018).*

## III.  STATUTORY AND REGULATORY FOUNDATIONAL REQUIREMENTS WERE MET FOR ADMISSION OF THE BREATH TEST RESULTS

Mr. Carvalho contends the breath test results were inadmissible because the director failed to demonstrate compliance with 19 CSR § 25-30.031(3), which provides that a copy of maintenance reports on breathalyzers must be filed with DHSS within 15 days. In considering this argument, it is helpful to review what must be shown to revoke or suspend a person's license for an excessive BAC.

The department of revenue is required to suspend or revoke an adult driver's license "upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was eight-hundredths of one percent or more by weight of alcohol in his blood.…" *§ 302.505.1.* At any trial de novo, the director also must present evidence

6

showing probable cause for the arrest and that the driver's blood alcohol level exceeded the legal limit. *Vanderpool v. Director of Revenue, 226 S.W.3d 108, 109 (Mo. banc 2007)*. The director has the burden of proof and the burden of persuasion. *White, 321 S.W.3d at 305*.

Section 577.020(3) provides, "To be considered valid, chemical analysis of the person's breath, blood, saliva, or urine *shall be performed*, according to methods approved by the state department of health and senior services." (Emphasis added). It requires DHSS approve techniques and establish standards for conducting these tests:

> 4. The state department of health and senior services shall approve satisfactory techniques, devices, equipment, or methods to be used in the chemical test pursuant to the provisions of sections 577.019 to 577.041. The department shall also establish standards to ascertain the qualifications and competence of individuals to conduct such analyses and issue permits which shall be subject to termination or revocation by the state department of health and senior services.

*§ 577.020(4)*. "To establish a prima facie foundation for the admission into evidence of the results of a breathalyzer test … the test must be performed: (1) by following the approved techniques and methods of the Division of Health; (2) by an operator holding a valid permit; (3) on equipment and devices approved by the division." *Stuhr v. Director of Revenue, 766 S.W.2d 446, 449 (Mo. banc 1989)*. This means when there are "regulations concerning the proper methods of *conducting* blood alcohol tests as authorized by Chapter 577 … the state must demonstrate absolute and literal compliance with these regulations prerequisite to introducing the test results into evidence.*" State v. Regalado, 806 S.W.2d 86, 88 (Mo. App. 1991)* (emphasis added).

But here, Mr. Carvalho does not dispute that the director adduced evidence of all

7

three foundational requirements to show the test was performed in compliance with DHSS regulations. The officer conducted the test on equipment approved by DHSS, and no party disputes a maintenance check had been conducted within 35 days on that machine. The officer held a valid permit from DHSS to use that equipment and conducted the test according to the procedures and techniques prescribed by DHSS.

Mr. Carvalho nonetheless argues the breath test should have been excluded because the director failed to prove compliance with another section of the regulations providing, "The permittee shall retain the original report of the maintenance check and submit a copy of the report so that it shall be received by [DHSS] within fifteen (15) days from the date the maintenance check was performed." *19 CSR § 25-30.031(3)*. Mr. Carvalho contends the director failed to present evidence the maintenance-check report for the breath analyzer had been submitted to DHSS within 15 days following the last maintenance check conducted on the machine.

Mr. Carvalho's complaint is with a record-keeping regulation requiring a copy of maintenance reports be submitted to DHS within a 15-day period after the test was conducted. He does not claim this failure affected the validity, performance, or accuracy of the test. He simply says it is, in effect, a foundational box the department did not check and, so, makes the test inadmissible.

But neither the relevant statutes nor the cited regulations make admissibility of the breath test result dependent on whether collateral record-keeping requirements were met. As noted earlier, section 302.312 states records properly deposited with the department of revenue shall be admissible. There is no question the report properly was deposited with

8

the department of revenue. Further, section 577.020(3) provides "To be considered valid, chemical analysis of the person's breath, blood, saliva, or urine *shall be performed*, according to methods approved by the state department of health and senior services ...." Mr. Carvalho does not contend the blood test was not performed according to approved methods. Finally, section 577.020(4) provides that the department shall establish techniques and establish standards for *performing* tests. Once again, there is no suggestion the test was not performed in accordance with these techniques and standards.

Indeed, although this is this Court's first opportunity to address this issue, Mr. Carvalho's argument has been rejected repeatedly by the court of appeals. *Turcotte v. State, 829 S.W.2d 494, 496 (Mo. App. 1992),* held a breath test was admissible although the maintenance report was not sent to DHSS at all because the "failure to file timely maintenance reports does not impeach the machine's accuracy, which is the main concern here." Both *Hearne v. v. Director of Revenue, 559 S.W.3d 66, 69 (Mo. App. 2018),* and *Roam v. Director of Revenue, 559 S.W.3d 1, 4 (Mo. App. 2018)*, found the failure to file the maintenance report within 15 days should not have rendered the drivers' tests inadmissible as that failure did not impeach the tests' accuracy, citing *Turcotte*. *Accord Potts v. State, 22 S.W.3d 226, 230 (Mo. App. 2000)* (breath test admissible when the permittee accidentally kept the copy of the maintenance check and sent the original to DHSS, as this minor record-keeping error did not affect the test's validity or performance).

By contrast, when regulatory matters affect the actual *performance* of maintenance tests of breathalyzers, strict compliance is required. *Woodall v. Director of Revenue, 795*

9

*S.W.2d 420, 420 (Mo. App. 1990)*, held the statutory foundation for the admission of a BAC test was not satisfied because the State admitted that no maintenance check took place within 35 days prior to the test, as this could have affected the validity of the test result. *See also Sellenriek v. Director of Revenue, 826 S.W.2d 338, 340 (Mo. banc 1992)* (finding evidence of compliance with 19 CSR § 25-30.031's requirement of regular maintenance checks is required because it bears directly on "proper functioning and operation of the machine when a blood alcohol analysis is conducted" and is intended "to ensure the reliability of a particular test result.").[3]

This holding does not undercut the importance of the recordkeeping requirements set out in the regulations issued under chapter 302. It simply recognizes the purpose of the regulation at issue is aimed at the internal recordkeeping needs of DHSS and allows DHSS to verify compliance among permittees. There may well be cases in which, for instance, the identity of a test result is at issue and compliance with this regulatory requirement can assist the court or administrative body in determining whether the proper test result is being considered. Further, records properly deposited with DHSS are admissible in courts and in administrative proceedings if certified by a proper custodian

---

[3] Mr. Carvalho suggests *White, 321 S.W.3d at 307*, effectively overruled *Turcotte* and its progeny. While he is correct *White* clarified the burden of production is on the director, neither *Turcotte* nor *Potts* was based on an incorrect placement of the burden of production. They turned on the fact the failure to comply with a collateral record-keeping requirement did not affect the validity of the test.

*Roam* and *Hearne* were decided after *White* and are consistent with it. In fact, *Roam* rejected this very argument, stating *White* does not discuss "compliance with a regulation that does not impact the validity of the test as a foundational prerequisite to the admission of breath test results." *559 S.W.3d at 4 fn. 1*. This Court agrees.

10

just as are records filed with the department of revenue, an obvious regulatory advantage. *§ 302.312.* But the regulation plays no role in determining the admissibility of the report in the absence of a claim it is relevant to the test's accuracy or performance. No such claim is made here.[4]

## IV. MR. CARVALHO'S PROCEDURAL DUE PROCESS RIGHTS WERE NOT VIOLATED

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge, 424 U.S. 319, 332 (1976).* Driver's licenses are property interests protected by procedural due process and "are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Dixon v. Love, 431 U.S. 105, 112 (1977)* (Quotations omitted). Mr. Carvalho does not make a due process challenge to the initial suspension of his license or deny he received a meaningful hearing. Instead, Mr. Carvalho argues he was provided constitutionally deficient notice of that hearing.

---

[4] The parties dispute whether the circuit court judgment addressed whether the document was timely sent to DHSS even though the court's order specifically states: "Petitioner first argues that Respondent failed to establish that maintenance reports for the subject breathalyzer were filed within 15 days of April 30, 2017. Petitioner's argument is contrary *to the records contained in Respondent's Exhibit A* and the applicable law." (Emphasis added). The report contained in exhibit A was stamped as received the day after the test was conducted by a named person who the official state manual lists as a current employee of DHSS. But, as the state manual was not before the circuit court, the parties dispute whether this Court can judicially notice it on appeal. Because the report was admissible regardless of whether it was timely filed with DHSS, the Court does not reach this issue.

Procedural due process permits deprivation of a property interest by the government only upon notice and an opportunity for a hearing. *Moore v. Board of Educ., 836 S.W.2d 943, 948 (Mo. banc 1992)*. This does not require the same type of process in every instance; rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Jamison v. State Department of Social Services, 218 S.W.3d 399, 406 (Mo. banc 2007), quoting, Morrissey v. Brewer, 408 U.S. 471, 481 (1972)*. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Stough v. Bregg, 506 S.W.3d 400, 404 (Mo. App. 2016), quoting, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)*.

Mr. Carvalho challenges the sufficiency of two notices. First, he argues the implied consent warning given him by the officer when he was first stopped failed to meet the standard this Court set out in *Teson v. Director of Revenue, 937 S.W.2d 195, 197 (Mo. banc 1996)*. *Teson* held an implied consent warning fails to satisfy due process if the words used "either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides." *Id. at 197*.

Mr. Carvalho concedes the officer read him the notice required by section 577.041 as to the consequences of *refusing* to take the breath test: "If you refuse to take the test, your driver's license will immediately be revoked for one year." He does not allege this notice failed to inform him of the consequence of refusal that his license would be immediately suspended or misled him into believing that consequence would not occur.

12

Rather, he alleges the notice the statute requires the officer to give him is "misleading" because the suspension of his license does not occur immediately and, therefore, the notice is inaccurate.

Contrary to Mr. Carvalho's argument, section 302.574.1 provides, when a driver refuses to submit to a breath test, "the officer … shall take possession of any license to operate a vehicle issued by this state which is held by that person." In other words, the driver immediately loses his license. Mr. Carvalho actually objects to the fact the statute does not also require the officer to inform him that, once his license was suspended, he would get a 15-day permit even if he refused the test. While he argues this makes the suspension not "immediate," he is simply incorrect. The suspension of his license is immediate. What is not immediate is a complete prohibition on his ability to legally drive. But due process "does not require notice that some particular step must be taken or that certain procedure be followed; the opportunity afforded is to make a choice of whether to 'appear or default, acquiesce or contest.'" *State v. Goodbar, 297 S.W.2d 525, 528 (Mo. 1957), quoting, Mullane, 339 U.S. at 314.*

*Teson* is not to the contrary. In *Teson*, the officer inadvertently left out the word "immediate" when giving Teson the implied consent warning—that is to say, the officer left out the very word argued here to be misleading. The defendant there made the entirely opposite argument from that now urged by Mr. Carvalho: he claimed, because he was not read the word "immediately," or a synonym, he was uninformed and uncertain about whether to refuse the test, for he did not know his license could be immediately suspended. *Id. at 197.* The Court rejected this argument not because it found the

13

suspension would not be immediate—indeed, that was the position taken by the separate opinion of Judge Limbaugh, a view the Court did not adopt. *Id. at 199*. Rather, the Court upheld the suspension because it found the immediacy of the suspension is implicit in the other words forming the warning even without the use of the word "immediately," as the remaining language makes it clear refusal to submit to the test "guarantee[s] a certain loss of the driving privilege." *Id. at 198.*

This Court reaffirms the result in *Teson*. The officer takes physical possession of the driver's license, and the driver is given a permit good for only 15 days. *§ 302.574.1*. This temporary permit is not a license. A court may subsequently stay this revocation, but until and unless the court acts, the revocation already has taken effect. *§ 302.574.3-5*. This immediate suspension when the test is refused contrasts with the provisions governing when a driver takes the breath test but is shown to be over the legal limit. In the latter circumstance, section 302.525.1 provides the actual suspension or revocation itself does not become effective until 15days after the driver has received notice. The implied consent warning did not mislead Mr. Carvalho as to the consequences of his refusal of the test.

Mr. Carvalho alternatively argues, even if the implied consent warning adequately told him the consequences of *refusing* the breath test, it did not tell him the consequences of *consenting to* the breath test – that his license could be suspended if the test shows a BAC exceeding .08 percent. He says by warning him of the immediate loss of his license if he refuses the test but not warning him of the consequences of taking the test, the warning "implies that providing a sample is a consequence-free act."

14

Before being asked to take the breath test in Missouri, every driver is told the reason for the test, to wit, the officer "had reasonable grounds to believe you were driving a motor vehicle while in an intoxicated or drugged condition. To determine the alcohol or drug content in your blood, I'm requesting you to submit to a chemical test of your breath." This language notifies every driver, including Mr. Carvalho, the purpose of the testing is to confirm or negate the officer's belief the driver is intoxicated. Mr. Carvalho also was given Miranda warnings after his arrest which informed him he may speak with an attorney, and he did so before deciding whether to take the test. "It strains credulity to suggest that a person arrested for [drunken driving] will not know that if he submits to a chemical test the results may be used against him at trial." *State v. Knous, 313 N.W.2d 510, 512 (Iowa 1981)*. While the record does not reveal why Mr. Carvalho chose to take the test, nothing in the record supports any cause for confusion as to the consequence of testing above the legal limit.

Even more basically, however, Mr. Carvalho's argument ignores that the purpose of the implied consent warning is not to obtain a driver's consent to a breath test. A driver already gave that consent as soon as he took the wheel in Missouri, for by driving on Missouri's public roads a person impliedly consents to tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood, if the police officer has reasonable grounds to believe the driver is intoxicated. *§ 577.020.1*; *Brown v. Dir. of Revenue, 34 S.W.3d 166, 171 (Mo. App. 2000)*. The purpose of the warning is only to inform drivers such as Mr. Carvalho they can withdraw that implied consent and refuse to submit to any chemical tests but, if they

15

so choose, there will be consequences. *See Kimbrell v. Director of Revenue, 192 S.W.3d 712, 716 (Mo. App. 2006)* ("Giving the driver the option to refuse to consent with the consequence of an automatic one year revocation of his or her driver's license balances the right to privacy against the public's interest in controlling the menace of drunken driving") (Internal quotations omitted). Its purpose is not to remind Mr. Carvalho of the consequences of a consent he already gave when he drove his first mile on Missouri's highways. Due process does not require such a reminder.

Mr. Carvalho finally argues he was misled by the written notice the officer gave him after he took but failed the breath test. The notice was entitled "Notice of Suspension or Revocation of Your Driving Privilege" and stated:

> You have been stopped and/or arrested upon probable cause that you were driving a vehicle while your blood alcohol level was over the legal limit. Your driving privilege will be suspended or revoked 15 days from the date of this notice if you do not request a hearing.

Mr. Carvalho notes section 302.505 requires more than probable cause to arrest in order for the director to administratively suspend his license. The director also must present evidence the person actually was driving the vehicle and that the driver's BAC content was actually above .08. He says because the notice did not inform him of the elements the director must find to support his suspension, it was misleading and insufficient.

Mr. Carvalho misapprehends the purpose of the notice. It accurately told him that if he did not request a hearing, his license would be suspended or revoked in 15 days. It did not purport to also tell him what the director would be required to prove if Mr. Carvalho did request a hearing, and he cites no authority requiring it to do so. Other

16

parts of the notice notified Mr. Carvalho how to request an in-person hearing and contained instructions for contacting the department of revenue.

This was adequate. While a notice cannot mislead, parties are "held to a knowledge of the law." *See Bishop v. Board of Ed. of Francis Howell Sch. Dist., St. Charles, 575 S.W.2d 827, 829 (Mo. App. 1987)*. Notice required by the Due Process Clause simply must "ensure that the opportunity for a hearing is meaningful," so that once informed of an administrative action, the person "can turn to public sources to learn about the remedial procedures available to him." *Sneil, LLC v. Tybe Learning Center, Inc., 370 S.W.3d 562, 572 (Mo. banc 2012), quoting, City of West Covina v. Perkins, 525 U.S. 234, 240-41 (1999)* (discussing property seizure notice). As noted in rejecting Mr. Carvalho's other due process claim, due process "does not require notice that some particular step must be taken or that certain procedure be followed; the opportunity afforded is to make a choice of whether to 'appear or default, acquiesce or contest.'" *Stough, 506 S.W.3d at 404, quoting, Mullane, 339 U.S. at 314*. The director had no obligation to act as counsel to the driver and inform him about the standards and burdens of proof that would apply at a hearing should he request one. [5]

---

[5]Mr. Carvalho also argues the notice of suspension is misleading when it states being "stopped upon probable cause" is a basis for suspension or revocation because unless one is under age 21, the suspension can follow only an arrest, not a mere stop under section 302.505. This Court does not address this question as Mr. Carvalho was arrested and was over 21. "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *State v. Ellis, 853 S.W.2d 440, 446 (Mo. App. 1993), quoting, United States v. Raines, 362 U.S. 17, 21 (1960)*.

## IV.  CONCLUSION

For the reasons stated above, this Court affirms.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.